J-S53005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY RESTO COLON | : | |
| | : | |
| Appellant | : | No. 542 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 16, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001046-2018

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 31, 2021**

Appellant, Henry Resto Colon, appeals from the judgment of sentence entered September 16, 2019, following his conviction by a jury of attempted homicide, aggravated assault, robbery, and burglary.  We affirm.

The facts of the crime are as follows:  Allentown Police Officer Andrew Bloomberg responded to a call at 389 North Bradford Street, Allentown, Pennsylvania, at approximately 8:00 a.m. on October 31, 2017, and was the first officer to arrive on the scene.  N.T., 7/30/19, at 10.  Upon arrival, people on the street were pointing at the residence and screaming, a situation he described as "chaotic."  **Id.**  When Officer Bloomberg entered the residence, he saw a male, later identified as Matilde Malave Arvelo ("the victim"), lying

---

[*] Retired Senior Judge assigned to the Superior Court.

on the kitchen floor in a pool of blood. *Id.* at 10, 21. The victim had a large gaping wound to his abdomen with intestines protruding, as well as a wound to his neck. *Id.* at 10–11. Shortly thereafter, emergency medical services arrived. *Id.* at 11. Because both medics were needed to attend to the victim, Officer Bloomberg drove the ambulance to the hospital. *Id.* at 11, 15.

As described by St. Luke Hospital Physician's Assistant John D'Allessandro, upon the victim's arrival at the hospital, doctors determined that his bowel had been lacerated, he had been stabbed in the neck, and surgery was required. N.T., 7/30/19, at 18, 23. The victim remained hospitalized for three weeks, until November 22, 2017. *Id.* at 24.

Officer Bloomberg described the kitchen where the victim was found. There was a large amount of blood on the floor as well as blood smeared on numerous items around the kitchen, such as the refrigerator and stove. N.T., 7/30/19, at 43. A garbage can was knocked down with the lid off, and household garbage was strewn around the kitchen. *Id.* at 43–44. Pieces of a broken coffee pot were also found in the kitchen. *Id.* at 46. A charger for a cellular telephone was plugged into the wall, but no telephone fitting the charger was found on the victim's person or in his home. *Id.* at 45.

Allentown Police Detective Raymond Ferraro also responded to the scene, and he was the lead investigator. N.T., 7/31/19, at 204. The victim's relatives provided the detective with the victim's cell phone number. *Id.* at 205. With that information, Detective Ferraro received approval to "ping" the

telephone to determine its general location. *Id.* Eventually, the victim's cell phone was recovered from a black garbage bag inside a dumpster that was located on the northeast corner of Pioneer and Washington Streets in Allentown, which was one-half block from Appellant's residence. N.T., 7/30/19, at 29–31, 55; N.T. 7/31/19, at 215. Police also recovered bloody clothing, a yellow hand towel, household trash, a pair of Levi jeans with the victim's cellular telephone in one of the pockets and pieces of broken glass from a broken coffee pot in the other pocket. N.T., 7/30/19, at 52–70.

Appellant's fingerprints were lifted from some of the household trash found in the garbage bag. N.T., 7/30/19, at 73, 81; N.T., 7/31/19, at 125. Appellant's DNA was found on the yellow hand towel, a hoodie, and sweatpants, all of which were found inside the garbage bag with the victim's cell phone. N.T., 7/31/19, at 125, 182–186.

Wendy Christman, the victim's daughter-in-law, testified that the victim always wore a necklace with his deceased wife's wedding ring attached. N.T., 7/31/19, at 129, 136–137. When the victim was found by police, he was not wearing this necklace, and it was never found. *Id.* at 137.

The procedural history is as follows. Appellant was arrested on December 1, 2017. Following a jury trial, Appellant was convicted of

attempted homicide, aggravated assault, robbery, and burglary.[1] Following a

presentence investigation ("PSI"), the trial court sentenced Appellant on

September 16, 2019:

> to an aggregate term of 25 to 60 years in a State Correctional
> Institut[ion]. On September 26, 2019, [Appellant] filed a timely
> Post-Sentence Motion challenging the sufficiency and weight of
> the evidence, alleging a violation of [the] ruling on a motion in
> limine, and asking for reconsideration of his sentence. A hearing
> was held on November 7, 2019, following which [the trial court]
> took the motions under advisement and the parties submitted
> briefs.

Trial Court Opinion, 1/23/20, at 1. The trial court denied post-sentence

motions on January 23, 2020. Both Appellant and the trial court complied

with Pa.R.A.P. 1925.[2]

> Appellant raises the following issues on appeal:
>
> A. Whether the evidence was sufficient to sustain [Appellant's]
> convictions for attempted homicide, burglary, and robbery by
> sufficient proof that [Appellant] was the perpetrator and that he
> committed the underlying theft required to prove robbery?
>
> B. Was the verdict against the weight of all the evidence in regards
> to the convictions for attempted homicide, burglary, and robbery?
>
> C. Was the trial court in error when it failed to grant [Appellant's]
> motion for mistrial after a Commonwealth witness testified to
> evidence that contradicted the court's ruling in a pretrial motion
> in limine banning the testimony?

---

[1] 18 Pa.C.S. §§ 901 and 2501, 2702(a)(1), 3701(a)(1)(i), and 3502(a)(1)(i), respectively.

[2] The trial court filed an order on March 13, 2020, indicating that its opinion of January 23, 2020, disposing of post-sentence motions, "satisfie[d] the requirements of Pa.R.A.P. 1925(a)." Order, 3/13/20, at 1.

D. Did the lower court abuse[] its discretion in imposing an excessive and harsh sentence for the attempted homicide charge when the court used elements to set the maximum sentence based upon considerations that were already a basis for the sentence and therefore should not be allowed to enhance it to its maximum?

Appellant's Brief at 10–11 (full capitalization omitted).

Appellant's first issue assails the sufficiency of the evidence supporting his convictions. In reviewing a sufficiency challenge, "we must decide whether the evidence admitted at trial, and all reasonable inferences drawn therefrom in favor of the Commonwealth, as verdict winner," are sufficient to support all elements of the offense. *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015). The jury, as fact-finder, is free to believe some, all, or none of the evidence. *Commonwealth v. Gomez*, 224 A.3d 1095, 1099 (Pa. Super. 2019). Moreover, the Commonwealth may sustain its burden of proof by wholly circumstantial evidence. *Commonwealth v. Diggs*, 949 A.2d 873 (Pa. 2008); *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

Appellant argues that the Commonwealth failed to identify him as the perpetrator of the crimes. Appellant's Brief at 20. He suggests that because there was no direct evidence identifying him as the perpetrator, the Commonwealth did not establish the requisite intent to sustain his convictions. *Id.* at 21. As noted by the Commonwealth, Appellant's argument focuses

- 5 -

upon the absence of eyewitness or other direct evidence of his identity. Commonwealth's Brief at 10.

It is important to reiterate that in applying the standard to determine whether the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to enable the jury to find every element of the crimes beyond a reasonable doubt, the Commonwealth's burden may be sustained by means of wholly circumstantial evidence. **Commonwealth v. Diggs**, 949 A.2d 873, 877 (Pa. 2008). "Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence." **Commonwealth v. Martin**, 101 A.3d 706, 718 (Pa. 2014). It is for the finder of fact to pass upon the credibility of the witnesses and weight of the evidence presented. **Commonwealth v. Melvin**, 103 A.3d 1, 40 (Pa. Super. 2014).

Specifically, regarding the issue of identity, our Supreme Court has stated:

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.

**Commonwealth v. Hickman**, 309 A.2d 564, 566 (Pa. 1973) (internal citations and quotation marks omitted).

As noted above, the factfinder was free to believe all, some, or none of the evidence. *Commonwealth v. Benito*, 133 A.3d 333, 335 (Pa. Super. 2016). We will not disturb the factfinder's credibility findings, which are supported by the evidence of record.

In determining the evidence was sufficient, the trial court explained as follows:

> The evidence presented established the victim was stabbed multiple times leaving blood throughout the victim's kitchen. Trash and a broken coffee pot were discovered by police in the kitchen. Several hours after the incident, police found the victim's phone inside a black trash bag in a dumpster located one half block from [Appellant's] residence. Police also found inside the bag the victim's cell phone, a piece of a broken coffee pot, bloody clothing, a bloody hand towel, and household trash. [Appellant's] fingerprints were found on some of the household trash inside the bag, and a DNA profile obtained from a blood sample on the hand towel matched the DNA profile of [Appellant]. Additionally, the victim's daughter-in-law established that the victim always wore several neck chains, one with his deceased wife's wedding ring on, bracelets, and rings. While some items were recovered from the scene, the chain containing the ring was never found.
>
> From this evidence, and all reasonable inferences, the jury could conclude beyond a reasonable doubt that [Appellant] was the perpetrator of a robbery during which he stabbed the victim multiple times.

Trial Court Opinion, 1/23/20, at 2–3.

As noted, police recovered a garbage bag containing the victim's cell phone along with glass shards from a broken coffee pot, bloody clothing, a bloody yellow hand towel, and household garbage. N.T., 7/30/19, at 51–65; 7/31/19, at 209. Police lifted Appellant's fingerprints from some of the household trash in the recovered garbage bag. N.T., 7/30/19, at 74; 7/31/19,

at 174. DNA testing on the blood recovered from three items revealed the following: Appellant's DNA was on the yellow hand towel, a mixture of the victim's and Appellant's DNA was recovered from the bloody hoodie, and the victim's DNA was found on the bloody sweatpants. N.T., 7/31/19, at 180–186. When Appellant was arrested at his residence one-half block from the dumpster, police found a clean yellow hand towel identical to the bloody yellow hand towel recovered from the garbage bag in the dumpster. N.T., 7/31/19, at 207, 221–223.

Further, based on the condition of the victim's kitchen when police arrived at the scene, the victim's wounds, and the missing jewelry and cellphone, it was reasonable for the jury to determine that a burglary, robbery, and attempted murder had been committed. The presence of the victim's missing cell phone in the garbage bag that also contained household trash with Appellant's fingerprints, bloody clothes that contained both the victim's and Appellant's DNA, and a bloody hand towel that was identical to the clean one in Appellant's residence, was ample circumstantial evidence for the jury to determine that Appellant was the perpetrator of these crimes. Additionally, the dumpster where these items were discovered was a mere one-half block from Appellant's residence. This issue lacks merit.

Appellant next argues that the verdict was against the weight of the evidence. Appellant's Brief at 25. The sole reason relied upon by Appellant is the fact that the victim was unable to identify Appellant as the perpetrator of

the assault. *Id.* at 26. In his brief, Appellant references allegedly supportive testimony at trial, but wholly fails to cite to the record. *Id.*; *see Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) ("It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim"); Pa.R.A.P. 2119 (c) ("If reference is made to the . . . record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears.").[3]

First, we must determine if Appellant's challenge to the weight of the evidence was properly preserved. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *Commonwealth v. Akrie*, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant properly preserved his weight-of-the-evidence claim by raising the issue in a timely post-sentence motion on September 26, 2019.

A trial court's determination that a verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. McGhee*, 230 A.3d 1277, 1287, (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is

---

[3] The Commonwealth, similarly, ignores the mandate of Rule 2119. Commonwealth's Brief at 14.

against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Lyons**, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 751–752 (Pa. 2000)). As an appellate court, "we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion." **Commonwealth v. Williams**, 176 A.3d 298, 312 (Pa. Super. 2017).

The trial court held as follows:

> [Appellant] alleges the verdict was against the weight of the evidence due to the fact that the victim did not identify [Appellant] in a photo array. However, the jury was made aware of the fact that the victim was shown an array containing [Appellant's] picture and that he was unable to identify [Appellant] as the perpetrator. In rendering their verdict, it was within the jury's province to consider this evidence along with the forensic evidence linking [Appellant] to the crime, make credibility determinations, and resolve any inconsistencies in the manner it saw fit. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017). The jury evidently resolved the conflicts in the evidence in favor of the Commonwealth and, in doing so, rendered a verdict consistent with the weight of evidence.

Trial Court Opinion, 1/23/20, at 3–4.

Our review of the record compels the conclusion that it contained overwhelming circumstantial evidence of Appellant's guilt. The jury was well aware that the victim, who spoke only Spanish, was not able to identify his assailant. N.T., 7/31/19, at 215. Defense counsel cross-examined

Detective Ferraro at length about the victim's inability to identify Appellant in a photographic array. *Id.* at 233–235. As noted by the trial court, it was within the jury's province to consider the evidence before it and make credibility determinations. *See Commonwealth v. Hunter*, 644 A.2d 763, 764 (Pa. Super. 1994) (Because the appellant took full advantage of his opportunity to discredit a witness and present his version of the facts to the jury, and the jury "simply chose not to believe him," the identification was not against the weight of the evidence.). The trial court did not abuse its discretion in finding that the verdict did not shock its sense of justice.

Appellant's third issue posits that the trial court erred in denying Appellant's request for a mistrial when Detective Ferraro allegedly proffered testimony contrary to the trial court's ruling on a pretrial motion *in limine*. Appellant's Brief at 27. The trial court explained as follows:

> A ruling on [Appellant's] pretrial motion in limine prohibited any reference to [Appellant's] prior record or previous convictions. [Appellant] now alleges this was violated by the following exchange:
>
> > [The Commonwealth]: In December, I believe December 1st, 2017, did you—was [Appellant] taken into custody?
> >
> > DETECTIVE FERRARO: Yes, he was.
> >
> > [The Commonwealth]: Were you accompanied by a uniformed police officer?
> >
> > DETECTIVE FERRARO: I was. And then I'm not—our agency did not take him into custody. It was another agency for something not—

[The Commonwealth]: Well—

DETECTIVE FERRARO: —related.

Notes of Testimony ("N.T."), Jury Trial 7/30/19 to 8/1/19, p. 215-216

Following, this exchange, defense counsel made an objection and a sidebar discussion took place. [N.T., 7/31/19, at 215–216]. Counsel moved for a mistrial and, following argument outside the presence of the jury, [the trial court] determined a mistrial was not warranted. After the jury was brought back into court, [the trial court] instructed the jury to disregard the last response of Detective Ferraro and ordered it stricken from the record. [The trial court] also gave the following cautionary instruction:

> Good afternoon again, ladies and gentlemen. The way we left it, there was an objection to the last response by Detective Ferraro, and I am instructing you to disregard that response. I'm striking it from the record. Do you remember the instructions I gave you before the case began, when I strike something from the record, you must totally disregard it. You cannot consider it in your determination. The only relevant consideration for you are the facts concerning this case, all right. So, once again, I'm striking the last response of Detective Ferraro and instructing you to disregard it when you go back to deliberate, all right.

N.T., [7/31/19, at] 220.

Trial Court Opinion, 1/23/20, at 4–5. Thus, Appellant's argument is not that the motion *in limine* was incorrectly decided, but that a mistrial was incorrectly denied because testimony violated the ruling relating to the motion *in limine*. Appellant's Brief at 28.

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its

discretion." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011) (citations omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Id.*** (internal citations and quotation marks omitted). A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice. ***Id.*** (internal citations and quotation marks omitted).

While Appellant sets forth case law in his brief explaining the standards for granting a mistrial, he has not explained how he was prejudiced, and he fails to support his allegation of error. Appellant's Brief at 29.

We conclude that the trial court did not abuse its discretion in denying Appellant's mistrial request. Our review of the record comports with the trial court's decision, and we rely on its explanation, as follows:

> "The law presumes that jurors will follow the trial court's instructions." *Commonwealth v. Gillen*, 798 A.2d 225, 231 (Pa. Super. 2002). Regarding mistrials, our courts have said:
>
>> A mistrial is an extreme remedy... that ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial. A trial court may remove taint caused by improper testimony through curative instructions. Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed,

- 13 -

whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate.

*Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003) (citations omitted).

The brief mention by Detective Ferraro of "another agency" was not to warrant the extreme remedy of a mistrial. The jury was instructed to disregard Detective Ferraro's response, and it is presumed the jury listened to that instruction. As such, a new trial is not warranted.

Trial Court Opinion, 1/23/20, at 4–5.

Any prejudice to Appellant was *de minimus*, and any prejudicial effect "was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Shull**, 148 A.3d 820, 846 (Pa. Super. 2016). Furthermore, we note that defense counsel accepted the trial court's decision to give the jury a cautionary instruction. N.T., 7/31/19, at 219. This issue is meritless.

In his final issue, Appellant contends his sentence for attempted homicide was excessive, and the trial court "placed a strong emphasis on the nature of the injury," a factor "already part of the overall guideline range." Appellant's Brief at 31–32.

Appellant's claim that the trial court considered an improper factor is a challenge to the discretionary aspects of the sentence. **Commonwealth v. Downing**, 990 A.2d 788, 792 (Pa. Super. 2010). We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." **Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa. Super. 2014). Rather,

- 14 -

where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170 (citing ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015).

Herein, the first three requirements of the four-part test are met: Appellant brought a timely appeal, he raised the challenge in a post-sentence

- 15 -

motion, and he included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raised a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

As noted above, Appellant avers that the trial court relied on an improper factor, the seriousness of the crime, in fashioning his sentence because the Sentencing Guidelines already included its consideration. Appellant's Brief at 13. We conclude that Appellant's claim presents a substantial question permitting appellate review. *See Commonwealth v. P.L.S.*, 894 A.2d 120, 127 (Pa. Super. 2006) (holding that a claim that the sentencing court considered impermissible factors raises a substantial question).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Caldwell*, 117 A.3d at 770 (internal quotation marks and citations omitted). Appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and

nature of the crime.   ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa.

2007) (quotations and citations omitted).

In rejecting this issue, the trial court stated, *inter alia*, as follows:

[W]here a presentence investigation report exists, it is presumed that the sentencing court was aware of and considered all relevant information contained in the report, along with any mitigating factors. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997).   Finally, in imposing a sentence, it is within the court's discretion to determine whether to make it concurrent with or consecutive to other sentences.   *Commonwealth v. Hoag*, 665 A.2d 1212 (Pa. Super. 1995) (citing *Commonwealth v. Graham*, 661 A.2d 1367 (Pa. 1995)).

Here, [the trial court] took into account all the information available to [it] at the time of sentencing, including the PSI report, statements of the victim's family, and the arguments of counsel. Contrary to [Appellant's] assertion, it was certainly appropriate for me to also consider the impact of the offense on the community at large.   42 Pa.C.S.A. § 9721.   [Appellant's] minimum sentences were within the standard range, and the maximum sentences were within the statutory limits.

Trial Court Opinion, 1/23/20, at 5–6.

We agree.   Here, Appellant's prior record score was three and the

offense gravity score was fourteen.   Because Appellant used a knife to slice

and stab the victim, the deadly-weapon-used enhancement applied and the

standard range of the guidelines recommended a minimum sentence of up to

two-hundred and forty months of imprisonment.   204 Pa.Code § 303.17(b)

(Deadly Weapon Enhancement/Used Matrix).   This is the minimum sentence

Appellant received.[4]  As the trial court acknowledged, it reviewed Appellant's PSI Report, including the Sentencing Guidelines and the investigator's recommendation.  The trial court confirmed it was aware of all of the information contained within, including any mitigating factors.  Trial Court Opinion, 1/23/20, at 6.  The court further asserted it also considered the statements of the victim's family and arguments of counsel.  *Id.*

As properly observed by the trial court, the injuries Appellant inflicted on the victim were "brutal."  Contrary to Appellant's contention, such an observation was reasonable under the circumstances, where Appellant stabbed the victim in the neck and sliced open his abdomen.  The wound to the victim's abdomen was a seven-inch laceration that resulted in the victim's bowels protruding from the wound and required emergency surgery and three weeks of hospitalization.  The particular facts of the case elevated the seriousness of this crime and were properly considered.  *See*, *e.g.*, 42 Pa.C.S. § 9721(b) ("the sentence imposed should call for total confinement that is consistent with . . . the gravity of the offense as it relates to the impact on the life of the victim and on the community"); *Commonwealth v. Simpson*, 829 A.2d 334, 339 (Pa. Super. 2003) (sentencing court permitted to consider factors already included in the guidelines if they are used to supplement other

_____

[4] The statutory **maximum** permissible for Appellant's crime was forty years of imprisonment, 18 Pa.C.S. § 1102(d), and therefore, the statutory limit on the **minimum** was 240 months.  42 Pa.C.S. § 9756(b)(1).

extraneous sentencing information).  We find no abuse of discretion by the trial court's imposition of this sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2021