J-S02027-16

2016 PA Super 30

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRENT BENITO | |
| Appellant | No. 149 EDA 2015 |

Appeal from the Judgment of Sentence December 9, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001077-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and STABILE, J.

OPINION BY LAZARUS, J.:                    **FILED FEBRUARY 09, 2016**

Brent Benito appeals from the judgment of sentence imposed in the Court of Common Pleas of Delaware County after a jury found him guilty of sexual assault[1] and criminal trespass.[2]  Upon careful review, we affirm.

Benito and the victim, L.C., were married in Trinidad in 2011.  Benito remained in Trinidad.  In 2012, L.C. rented an apartment in Upper Darby, Delaware County.  On September 4, 2013, Benito moved into L.C.'s apartment.  The apartment lease remained at all times in L.C.'s name alone.  After Benito moved in with L.C., the relationship deteriorated.  L.C. testified that Benito physically abused her on more than one occasion.

_____

[1] 18 Pa.C.S.A. § 3124.1.

[2] 18 Pa.C.S.A. § 3503(a)(1)(ii).

On December 21, 2013, at Benito's request, L.C. purchased Benito a one-way train ticket to Connecticut, where he planned to spend Christmas with his friend, Nicholas. On December 26, while he was still in Connecticut, Benito testified that L.C. told him to "stay by your bitch you spend Christmas with" rather than return to Upper Darby on that date as he planned. N.T. Trial, 9/4/14, at 17-18. On December 27, L.C. changed the locks to her apartment because she "didn't want [Benito] to come back." N.T. Trial, 9/3/14, Vol. I at 89.

On December 29, Benito called L.C., wanting to return to her apartment. L.C. told him she would be out of town for New Year's Eve. Nonetheless, Benito returned to the apartment that same day at approximately 9:00 p.m. When Benito reached the apartment door, he realized the locks had been changed and called L.C.'s phone four times. She did not answer, although Benito could hear the phone ringing inside the apartment. Benito proceeded to knock on the door. L.C. asked who was there and Benito identified himself. L.C. asked what he was doing there and told him to "Go back by your bitch you spend Christmas with." N.T. Trial, 9/4/14, at 19. She also told him to go to his aunt's house. Benito then forced his way through the door and into the apartment. L.C. attempted to flee, but Benito stopped her. He instructed her to call in sick to work and placed a suitcase in front of the damaged door to prevent it from opening. Benito also instructed L.C. to call his aunt; L.C. did so and informed the aunt that Benito had broken down the apartment door. Benito obtained a knife

from the kitchen and placed it in his pocket. Thereafter, he directed her into the bedroom, where he sexually assaulted her.

On September 5, 2014, a jury convicted Benito of the above offenses and, on December 9, 2014, the court sentenced him to 4 to 8 years' imprisonment for sexual assault and a consecutive term of probation of 2 years for criminal trespass. Benito did not file post-sentence motions. He filed a timely notice of appeal to this Court on January 7, 2015, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Benito challenges the sufficiency of the evidence to establish the crime of criminal trespass.

We begin by noting our well-settled standard of review.

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record and all evidence actually received. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is de novo and our scope of review is plenary.

***Commonwealth v. Dawson***, 2015 Pa. Super. LEXIS 804, *9-10 (Pa. Super. 2015) (internal citations and punctuation omitted).

Benito challenges his conviction for criminal trespass, which is defined as follows:

§ 3503.  Criminal trespass.

(a)  Buildings and occupied structures.

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

. . .

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S.A. § 3503(a)(1)(ii).  This Court has previously adopted the following definition of privilege:  "A person is privileged, within the meaning of a burglary statute,[3] if he may naturally be expected to be on the premises often and in the natural course of his duties or habits. . . .  Further, a person who is privileged may still commit burglary if he would not reasonably be expected to be present[.]"  **Commonwealth v. Corbin**, 446 A.2d 308, 311 (Pa. Super. 1982).

Here, Benito claims that, because he resided with the victim – his wife – in the apartment in question, he was "licensed and privileged" to enter the premises and, therefore, he could not be convicted of trespass.  Benito

_____

[3] Criminal trespass is similar to burglary and both require a finding that the actor lacked license or privilege to enter the building or structure in question. **See Commonwealth v. Walker**, 559 A.2d 579, 583 (Pa. Super. 1989); 18 Pa.C.S.A. § 3502.  Accordingly, case law interpreting the "license or privilege" element of burglary is relevant to our analysis of that same element of the crime of criminal trespass.

argues that he had lived in the apartment for approximately four months and had thus established that his presence on the premises was in the natural course of his duties or habits. ***See id.*** Accordingly, despite the fact that wife was the sole lessee of the property and did not wish for him to enter the premises, Benito argues his privilege was established.

The Commonwealth emphasizes that L.C. was the sole tenant listed on the lease and that Benito had only resided on the premises for "a scant four months" prior to the incident. Brief of Appellee, at 7. The Commonwealth concedes that "if [Benito's] name was listed on the lease or there had been an official sublet agreement, [Benito's] return to the apartment would arguably be a reasonable part of his 'natural course or duties or habits.'" Brief of Appellee, at 10. However, under the facts of this case, the Commonwealth asserts, Benito's "privilege to enter or be in L.C.'s apartment is completely dependent upon L.C.'s discretion, and she clearly revoked any invitation and privilege to enter." ***Id.*** In the alternative, the Commonwealth argues that even if Benito did possess a property interest in L.C.'s apartment, "marriage does not provide absolute privilege to each . . . other's property." ***Id.*** at 8.

This appears to be a case of first impression in Pennsylvania. Neither party has cited a case directly on point, and our own research has uncovered none. Benito cites three cases in which courts concluded that a spouse lacked a license or privilege to enter the marital abode, but distinguishes them from the instant matter based on either: (1) the presence of a court

order excluding one spouse from the property, or (2) the existence of a significant period of separation, extinguishing the defendant's privilege. *See Commonwealth v. Wholaver*, 903 A.2d 1178 (Pa. 2006) (existence of PFA demonstrated absence of license to enter former marital home); *Commonwealth v. Stallworth*, 781 A.2d 110 (Pa. Super. 2001) (existence of PFA, as well as use of force to enter residence, established absence of license or privilege); *Commonwealth v. Woods*, 638 A.2d 1013 (Pa. Super. 1994) (absence of license found where couple had been living apart and husband used force to enter residence). However, Benito provides no support for his contention that the mere fact of the parties' marriage grants him automatic license to enter the victim's domicile over her emphatic objection.

In its brief, the Commonwealth notes that a lack of privilege may be found from the surrounding circumstances, *Commonwealth v. Gordon*, 477 A.2d 1342, 1348 (Pa. Super. 1984), and highlights the following facts: (1) L.C. was the sole person on the lease and controlled who could enter; (2) Benito left his key in the apartment when he traveled to Connecticut; (3) L.C. spoke to Benito while he was in Connecticut and told him not to return; (4) L.C. changed the locks to the apartment while Benito was gone; (5) L.C. refused to let Benito in when he returned on December 29 and told him to go to his aunt's house; and (6) Benito used force to enter the apartment.

We conclude that the evidence adduced at trial, viewed in the light most favorable to the Commonwealth as verdict winner, supports the verdict

in this matter. Benito's privilege to be present in the apartment flowed directly from the license granted to him by L.C. Once L.C. repeatedly made it clear to Benito that she did not want him on the premises, his privilege was revoked. This lack of privilege – and Benito's knowledge thereof – is evidenced by the fact that he resorted to kicking in the door to gain entry. *See Stallworth*, 781 A.2d at 118 (citing eyewitness testimony that defendant – victim's estranged husband – had kicked victim's door down as evidence tending to establish "lack of privilege or license" element of crime of burglary). Accordingly, we affirm Benito's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2016