J-A24026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IAN B. MCGAHREN | : | |
| | : | |
| Appellant | : | No. 3074 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008653-2021

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 28, 2023**

Appellant, Ian B. McGahren, appeals from the November 3, 2023 Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County following his conviction of, *inter alia*, Criminal Trespass.[1]  Appellant challenges the sufficiency of the evidence underlying his Criminal Trespass conviction.  After careful review, we affirm.

**A.**

We glean the following facts and procedural history from the certified record.  Appellant and the complaining witness, Deanna Meckling-Peruto, had known each other for 13 years and had been in a relationship for 7 years. Although they had previously lived together, they stopped living together a year prior to the incident underlying this appeal.  Nonetheless, they visited

_____

[1] 18 Pa.C.S. § 3505(a)(1)(ii).

each other's homes most days, and Ms. Meckling-Peruto had, on at least one occasion, given Appellant a key to her apartment.

On September 17, 2021, Appellant came to Ms. Meckling-Peruto's apartment. She told Appellant that her father was in hospice, so she would ask him to leave if they fought. After having drinks at a nearby bar, they returned to the apartment and began to argue, so Ms. Meckling-Peruto told Appellant to leave "multiple times." N.T. Trial, 5/13/22, at 34. Instead, Appellant locked himself in the bathroom. When Ms. Meckling-Peruto began to gather his backpack, clothes, and laptop, Appellant came out of the bathroom, yelled, and lunged at her with a kitchen knife. Ms. Meckling-Peruto began filming the encounter with her cell phone, and Appellant knocked the phone out of her hand and choked her. She told her Amazon Alexa device to call 911, but Appellant ripped it out of the wall.

Ms. Meckling-Peruto "realized there was no way for [her] to contact help" so she suggested that they leave her apartment to get dinner at the bar. *Id.* at 20. While at the bar, Appellant ordered 3 shots, grabbed Ms. Meckling-Peruto's face and arms, and spilled his drinks. When Appellant left the table to use the restroom, Ms. Meckling-Peruto ran home and locked her doors.

Appellant arrived shortly thereafter and repeatedly called, banged on the front door, and screamed. Ms. Meckling-Peruto hid in her bedroom but when Appellant came to the patio door of the bedroom, Ms. Meckling-Peruto grabbed her dog and locked herself in the bathroom. She heard Appellant

hitting the patio door, yelling her name, and then running in the hallway outside the apartment. Her neighbors, who were outside, called the police.

After this incident, Ms. Meckling-Peruto stayed with her parents for a few days. When she returned, her front door was ajar, her belongings were in disarray, and Appellant's belongings were missing. Her patio door was also damaged.

The doors to Ms. Meckling-Peruto's building and its courtyard require a fob for entry, while her apartment door had a key. A few weeks prior to the above incident, Ms. Meckling-Peruto had left a key and fob for Appellant to lock her door in the morning, but she believed that Appellant had returned it that same day.

On September 22, 2021, the Commonwealth charged Appellant with Burglary, Criminal Trespass, Possession of an Instrument of Crime, Terroristic Threats, Simple Assault, Recklessly Endangering Another Person, Criminal Mischief, and Harassment.[2]

Appellant proceeded to a bench trial on May 13, 2022. At trial, Ms. Meckling-Peruto and Officer Wang testified in accordance with the above facts. Appellant also testified. During his testimony, Appellant stated that both he and Ms. Meckling-Peruto were intoxicated, and that she had had the knife during the initial altercation. Appellant also testified that he still had the key

---

[2] 18 Pa.C.S. §§ 3502(a)(1)(i), 3503(a)(1)(i), 907(a), 2706(a)(1), 2701(a), 2705, 3304(a)(4), and 2709(a)(1), respectively.

from a few weeks prior and that, after remembering he had it, he used it to let himself in after the second visit to the bar to obtain his belongings from the main room of the apartment. While inside, he did not see Ms. Meckling-Peruto, but he "didn't [] look through the whole apartment." *Id.* at 60.

The court convicted Appellant of Criminal Trespass, Possessing an Instrument of Crime, Simple Assault, Recklessly Endangering Another Person, Criminal Mischief, and Harassment, but acquitted him of Burglary. On October 7, 2022, the court sentenced Appellant to 6 -12 months' incarceration, with release to house arrest at 6 months, followed by 3 years' probation. Appellant filed a Motion for Reconsideration of Sentence, which the court granted in part. On November 2, 2022, the court resentenced Appellant by paroling him to the Caron Treatment Center on November 28, 2022, with the condition that he would be released on house arrest after he completed treatment.

**B.**

Appellant timely filed a Notice of Appeal.[3] Due to the trial judge's retirement, the trial court did not request a Rule 1925(b) statement or file a Rule 1925(a) opinion.

---

[3] Appellant filed a Notice of Appeal on November 30, 2022. He then filed an Amended Notice of Appeal on December 2, 2022, that referenced both the October 7, 2022 Judgment of Sentence and the modified Judgment of Sentence on November 2, 2022. Counsel did not seek permission to file an Amended Notice of Appeal, nor was he directed to file one. However, this appeal properly lies from the unmodified Judgment of Sentence because Appellant challenges his underlying conviction, not the sentence itself.

Appellant presents one issue for our review:

Did the Court err in finding Appellant [] guilty of [C]riminal [T]respass, pursuant to 18 Pa.C.S. §3503(1)(ii), when he was licensed or privileged to enter the premises he entered; he had the key fob to enter the premises; he had been in a seven-year relationship with the complainant; and she did not advise him that he was no longer welcome in her apartment?

Appellant's Br. at 2.

**C.**

Appellant challenges the sufficiency of the evidence supporting his Criminal Trespass conviction.  In addressing this challenge, our well-settled standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner.  ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014).

We determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v. May***, 887 A.2d 750, 753 (Pa. 2005) (citation omitted).  The Commonwealth "can meet its burden by wholly circumstantial evidence." ***Commonwealth v. Benito***, 133 A.3d 333, 335 (Pa. Super. 2016) (citation omitted).  The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017).  "In conducting this review, the

appellate court may not weigh the evidence and substitute its judgment for the fact[]finder." ***Id***.

To sustain a conviction for Criminal Trespass, the Commonwealth must prove that the defendant, "knowing that he is not licensed or privileged to do so, . . .breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S. § 3503(a)(1)(ii). "Breaks into" is defined as "[t]o gain entry by force, breaking, intimidation, [or] unauthorized opening of locks[.]" ***Id.*** at (a)(3).

It is a defense to a charge of Criminal Trespass that a defendant "reasonably believed that. . .[a] person empowered to license access. . .would have licensed him to enter[.]" ***Id.*** at (c)(3); ***Commonwealth v. Goldsborough***, 426 A.2d 126, 127 (Pa. Super. 1981). However, the surrounding circumstances may prove that the defendant knew that he did not have license or privilege to enter. ***See***, ***e.g.***, ***Benito***, 133 A.3d at 336 ("[The defendant's] lack of privilege—and [his] knowledge thereof—is evidenced by the fact that he resorted to kicking in the door to gain entry."). ***See also Commonwealth v. Baker***, 201 A.3d 791, 798-99 (Pa. Super. 2018) (affirming a criminal trespass conviction where the evidence established that, although the complainant had given the appellant a key to the property, she had subsequently and unambiguously told the appellant that he was not welcome on her property).

**D.**

Appellant asserts that the Commonwealth's evidence was insufficient to establish that he knew he lacked license or privilege to enter Ms. Meckling-Peruto's apartment as required for Criminal Trespass. Appellant's Br. at 11. Specifically, he argues that he and Ms. Meckling-Peruto had been in a relationship for 7 years, she failed to give him notice that he was not welcome in her apartment, he had a key to the apartment, and that she had his wallet, computer, and other items, thus "encouraging him to return." *Id.* at 12, 15-16. Furthermore, he maintains that "she did not change the locks nor tell him not to return. Nor did she refuse to let him enter. She just did not answer the door when he admittedly banged on it." *Id.* at 15.

In his argument, Appellant asks us to consider the evidence in the light most favorable to himself. However, viewing the record in the light most favorable to the Commonwealth, as we must, establishes that Appellant knew he was not privileged to enter Ms. Meckling-Peruto's apartment. Ms. Meckling-Peruto's testimony, believed by the trial court, demonstrated that she told Appellant multiple times to leave her apartment. N.T. Trial at 34. Contrary to Appellant's assertions, she did not simply "not answer the door" when Appellant banged on it—rather, she hid, first in her bedroom then in the bathroom, after fleeing from him at the bar. Furthermore, Appellant's attempt to use force to enter before realizing that he had a key is circumstantial

evidence that Appellant knew he lacked privilege to enter. **Benito**, 133 A.3d at 336.

Finally, although Appellant had a key, Ms. Meckling-Peruto had given it to him for the limited purpose of locking her apartment one to two weeks earlier, and she thought Appellant had given it back. However, on the day of the incident, it was clear Appellant did not have permission to enter the apartment. In fact, Ms. Meckling-Peruto told Appellant to leave multiple times before she was able to get him to leave the apartment by suggesting they go out to dinner. Once in the restaurant, she was able to run away from him when he went to the bathroom to lock herself in the apartment and refused to allow him back into her apartment. These events establish that, despite having a key, Appellant was not privileged to enter Ms. Meckling-Peruto's apartment. **Baker**, 201 A.3d at 798-99.

Accordingly, we conclude that the Commonwealth's evidence was sufficient to establish that Appellant committed criminal trespass because he knew he did not have license or privilege to enter Ms. Meckling-Peruto's apartment. Appellant's argument that he believed he had permission to enter is based on a self-serving recitation of the facts that is not supported by the record, and it therefore lacks merit.

**E.**

In sum, we conclude that the evidence was sufficient to support Appellant's conviction of Criminal Trespass.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023