J-S07010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEX CANN | : | |
| | : | |
| Appellant | : | No. 1238 MDA 2023 |

Appeal from the Judgment of Sentence Entered August 15, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001654-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED: MARCH 5, 2024**

Alex Cann appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Schuylkill County, after the trial court, sitting in a nonjury trial, convicted him of criminal trespass[2] and retail theft.[3] On appeal, Cann

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Cann was sentenced on August 14, 2023. The trial court entered an amended judgment of sentence on August 15, 2023. Counsel filed a notice of appeal on September 1, 2023, erroneously stating Cann appealed from the sentence imposed on August 14, 2023, rather than the August 15, 2023 amended judgment of sentence. In cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to 42 Pa.C.S.A. § 5505, the direct appeal lies from the amended judgment of sentence. **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010); **see also Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (correcting caption when appellant misstates from where appeal lies). We have corrected the caption accordingly.

[2] 18 Pa.C.S.A. § 3503(a)(1)(i).

[3] **Id.** at 3929(a)(1).

challenges the sufficiency of the evidence supporting his criminal trespass conviction. Upon careful review, we affirm.

On the night of July 2-3, 2022, Brian Bracconeri was working as a cashier at Fegley's Mini Mart in McAdoo, Schuylkill County, from 8:00 p.m. to 6:00 a.m. *See* N.T. Trial, 6/15/23, at 28. At approximately 3:00 to 3:30 a.m., a person Bracconeri identified as Cann entered the store. *Id.* Bracconeri testified that, after entering the the store, Cann used the bathroom for approximately five minutes. *Id.* at 28, 30. Thereafter, Cann came to the checkout counter with a red and black bottle of Body Armor sports drink and engaged Bracconeri in conversation. *Id.* at 28, 31. Cann subsequently replaced the Body Armor drink in the cooler and left the store. *Id.* at 28.

Jennifer Roslevich, the store's manager, testified that she arrived at work at 6:00 a.m. on the morning of July 3, 2022.[4] *Id.* at 14. She proceeded to the bathroom, at which time she observed two empty bottles of Body Armor

_____

[4] Bracconeri testified that Roslevich actually arrived at 4:30 a.m. on that morning.

> Q: After [Cann] left the store, and when your manager, Jen Roslevich, came in around 6 a.m., had anybody been in that bathroom?
>
> A: I think at that time, [Roslevich] was coming in at 4:30 [a.m.] because she moved her schedule back because of her kids. Usually during that time, she comes in around 4:30. Like, she moved back. It was only, like, an hour difference between when I was there—or when [Cann] was here and she came in.

N.T. Trial, 6/15/23, at 32.

drink in the trash can. *Id.* at 15, 18. Upon leaving the bathroom, Roslevich asked Bracconeri "if there was anybody in the bathroom, anybody suspicious in the store" and he informed her that Cann had been there. *Id.* at 15. Roslevich knew Cann, having grown up with him, and had previously informed him on several occasions that he was no longer allowed in Fegley's Mini Mart. *Id.* at 17; *id.* at 20 (Roslevich testifying that, after she told Cann he was banned from the store, "[h]e got nasty. He raised his fist towards me.").

After speaking with Bracconeri, Roslevich reviewed the store's video surveillance footage and observed Cann walk over to the cooler where Body Armor drinks are stored and remove two bottles of the beverage. *Id.* at 16. She then watched as Cann walked into the bathroom with the bottles; when he exited the bathroom, they were not in his hand. *Id.* at 16-17. Bracconeri testified that he had cleaned the bathroom at some point between 2:00 and 2:30 a.m. and, at that time, there were no drink containers in the trash. *Id.* at 29. Bracconeri stated that no one other than Cann entered the bathroom between the time Bracconeri cleaned it and the time of Roslevich's discovery of the empty Body Armor bottles. *Id.* at 30, 32.

Cann took the stand in his own defense and testified that the person in the video was not him. With regard to the actual identity of the individual shown on the surveillance video, Cann testified as follows:

Q: Do you know who it was?

A: I met him before. I've seen him before. Do I know his name on paper? No. Do I actually know his name? No. Have I talked to him? Yeah. And it was at Luzerne County lockup. . . .

I was there on a DUI. Let me think. DUI three years ago. So 2019. I recognize the guy. Someone asked me if that was my cousin or something over in, what they're calling the dayroom. I walked over and I was like, you know, what's a cousin? I told him, like, 90 times, what's a cousin? What are you talking about?

*Id.* at 38-39, 42.

Cann further testified that, at the time of the incident, he was incarcerated in Luzerne County Prison. *Id.* at 39-40 (Cann testifying that he was released from prison on the morning of July 5, 2022). In response to Cann's alibi defense, the Commonwealth presented the testimony of Sergeant Stanley Fiedorczyk, the record sergeant at Luzerne County Prison, who confirmed that prison records indicated that Cann was not incarcerated at that facility on July 3, 2022.

A nonjury trial was held on June 15, 2023, after which the trial court convicted Cann of the aforementioned offenses. The court deferred sentencing pending the preparation of a presentence investigation report. On August 14, 2023, the trial court sentenced Cann to 3 to 12 months' incarceration, plus 12 months of probation, for criminal trespass. The court imposed a fine and restitution for the retail theft conviction. Cann filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, he challenges the sufficiency of the evidence supporting his criminal trespass conviction.

In addressing a challenge to the sufficiency of the evidence, our well-settled standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the

Commonwealth as verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). We determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005) (citation omitted). The Commonwealth "can meet its burden by wholly circumstantial evidence." *Commonwealth v. Benito*, 133 A.3d 333, 335 (Pa. Super. 2016) (citation omitted). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for [that of] the factfinder." *Id.*

A person commits the offense of criminal trespass if, "knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge[,] or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S.A. § 3503(a)(1)(i).

Here, Cann argues that Roslevich did not testify to the "exact content" of her discussions with Cann in which she forbade him further entry into the store. Brief of Appellant, at 112. He further asserts that Bracconeri did not testify that Cann entered through subterfuge, such as an alias, disguise, or false identity, or that he surreptitiously remained in the store. *Id.*

- 5 -

Accordingly, Cann argues that the trial court erred in convicting him of criminal trespass. He is entitled to no relief.

In order to sustain a conviction for criminal trespass, the Commonwealth need not establish that Cann gained access through subterfuge or that he surreptitiously remained in the building. As the statute is phrased in the disjunctive, it is sufficient that the Commonwealth prove he entered the premises knowing that he was not licensed or privileged to do so. ***See*** 18 Pa.C.S.A. 3503(a)(1)(i). In ***Commonwealth v. Baker***, 201 A.3d 791 (Pa. Super. 2018), this Court affirmed the appellant's conviction for criminal trespass where, although the victim had previously given him a key to her apartment, she subsequently informed him several times not to be present on the property. ***See also Benito***, 133 A.3d at 336 (affirming criminal trespass conviction where victim repeatedly made clear to defendant that she did not want him on premises, thus revoking his privilege).

The trial court, sitting as finder of fact, credited Roslevich's testimony that she informed Cann on several occasions that he was no longer permitted to enter Fegley's Mini Mart. Knowing that his license/privilege had been revoked, he chose to enter the premises anyway. Accordingly, the evidence was sufficient to sustain Cann's conviction for criminal trespass.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/05/2024</u>