J-S15022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BILAL WASHINGTON | : | |
| | : | |
| Appellant | : | No. 281 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 10, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001640-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BILAL WASHINGTON | : | |
| | : | |
| Appellant | : | No. 282 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 10, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001642-2024

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 23, 2026**

In these consolidated appeals, Bilal Washington (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of criminal mischief – damaging personal property and possession of an instrument of crime (PIC), as well as one count of criminal trespass,

_____

[*] Former Justice specially assigned to the Superior Court.

graded as a felony of the second degree.[1]  Appellant challenges solely his conviction of criminal trespass, asserting that the trial evidence was insufficient to support both the conviction and its grading.  After careful review, we affirm.

Appellant's convictions arise out of his trespass into the residence of Dolores Zollicoffer (Zollicoffer) on February 11, 2024, as well as his subsequent actions directed at Zollicoffer and her family.  The trial court detailed the relevant evidence adduced at trial in its Pa.R.A.P. 1925(a) opinion:

> Zollicoffer lived in the lower level of a house [(the house) located] in the Mount Airy neighborhood of Philadelphia and rented out the upper level of the house to three tenants, including her sister, [Andrea] Branche [(Branche)].  N.T., 8/21/24, at 40:10-41:1, 101:16-102:11.  The house had two points of entry: a main entrance at the top of the front steps that led to the upper-level rented areas, and a lower-level entrance near the driveway that led directly to Zollicoffer's living area.  *Id.* at 43:20-44:1, 102:13-20.  Zollicoffer, who was wheelchair-bound and unable to use stairs, lived exclusively on the lower level and only used the lower-level entrance.  *Id.* at 43:16-44:1, 79:12-16.  She testified that historically, she had kept that entrance unlocked so that visitors could enter her living area without requiring her to physically get to the door, since it was hard for her to do so in her wheelchair. *Id.* at 41:18-21. However, [Zollicoffer] had recently been keeping her door locked as a safety measure due to unspecified "issues" she had been experiencing.  *Id.* at 41:25-42:2, 42:14-23. [Zollicoffer] conceded that the lock sometimes did not latch well and might open if someone pushed it "real, real hard," but **confirmed she had intentionally locked the door on the day of the alleged trespass.** *Id.* at 42:24-25, 81:22-82:11, 89:11-14.

_____

[1] 18 Pa.C.S.A. §§ 3304(a)(5), 907(a), 3503(a)(1)(ii).

Zollicoffer had met Appellant when he began a relationship with Branche in June of 2023. *Id.* at 39:10-13, 100:20-101:5. At some point while Branche and Appellant were romantically involved, Zollicoffer began renting a room to Appellant in a different property she owned. *Id.* at 78:25-79:5. Appellant's relationship with Branche ended in December of 2023, but he continued to rent the room at Zollicoffer's other property, typically paying his rent electronically via "cash app." *Id.* at 40:3-4, 54:6-12, 119:8-10. Branche invited Appellant to visit the house a few times during their relationship. *Id.* at 80:3-6, 117:25-118:6. [Branche] testified, however, that Appellant had not visited the house since their relationship ended, **nor had he been invited to do so**. *Id.* at 44:3-12, 105:18-23, 119:8-16. **Zollicoffer testified that Appellant was not invited to the house as of February 11, 2024, and that about a week before then, she had left a letter** [**for Appellant,**] **at the property he rented from her**[**,**] **telling him that she did not want him to return to the**[] **house.** *Id.* at 80:22-81:4.

On February 11, 2024, home security surveillance video captured Appellant walking briskly towards Zollicoffer's entrance. *Id.* at 51:6-12; Ex. C2 at 00:04-00:12. [Appellant] tried to open the door using the doorknob, which appeared not to turn. Then he banged on the door. *Id.* at 00:12-00:14. There was no response. Appellant then shouted through the closed door, "I need ten bands every month. Ten. I'll be back," a phrase Zollicoffer later learned was a demand for money. *Id.* at 00:14-00:20; N.T. 8/21/24 at 83:1 1-17. [**Appellant**] **turned around and gave two hard kicks backwards, causing the door to swing open behind him.** Ex. C2 at 00:20-00:22. He then turned back toward the entrance and walked in, shouting "you hear me D[o]lores? Huh?" *Id.* at 00:22-00:27. Zollicoffer testified that once Appellant was inside, he repeated his demand for money. N.T., 8/21/24, at 45:1-9, 51:4-17, 83:1-14. [Zollicoffer] asked [Appellant], "did you just break into my house?" *Id.* at 83:7-8. In response, [Appellant] demanded money a third time. *Id.* at 83:8-9. [Zollicoffer] again asked if [Appellant] had broken in, and he left. *Id.* at 83:9-10. The surveillance video shows [Appellant] storming out of the apartment, saying "ain't nobody breaking nothing," or "ain't nobody breaking up," slamming the door, and striding away. Ex. C3 at 00:03-00:09. As he passed Zollicoffer's car, [Appellant] gave it the same kind of backwards kick that he had used on the

door, which landed with such force that the car rocked slightly back and forth. *Id.* at 00:09-00:11.

Trial Court Opinion, 7/25/25, at 2-4 (emphasis added; some citations modified).

Law enforcement arrested Appellant on February 19, 2024, and charged him at two separate dockets: CP-51-CR-0001640-2024 (Case 1640) and CP-51-CR-0001642-2024 (Case 1642). At Case 1640, the Commonwealth charged Appellant with, *inter alia*, one count of criminal trespass.[2] At Case 1642, Appellant was charged with several crimes, including three counts of PIC, two counts of criminal mischief, and one count each of attempted arson, recklessly endangering another person (REAP), and attempted risking catastrophe.[3]

The matter proceeded to a consolidated jury trial in Case 1640 and Case 1642 in August 2024. Zollicoffer and Branche testified for the Commonwealth consistent with the foregoing recitation.[4] The Commonwealth also presented to the jury video surveillance footage recorded by cameras located at and around the house. As the trial court described in its opinion,

_____

[2] As Appellant states, "only Appellant's criminal trespass conviction is being challenged on this appeal." Appellant's Brief at 4 n.1.

[3] 18 Pa.C.S.A. §§ 907(a), 3304(a)(5), 901(a) and 3301(a)(1), 2705, 901(a) and 3302(b).

[4] The Commonwealth also presented testimony from three police officers and a fire marshal, which is not relevant to the instant appeal. Appellant did not present any witnesses or testify on his own behalf.

[v]ideos from February 11, 2024, showed Appellant entering Zollicoffer's apartment, leaving it, and kicking her car. Exs. C2-C5. Video from February 14, 2024, showed [Appellant] trying to enter Zollicoffer's apartment again, and then smashing Zollicoffer's car's windshield with a heavy rock. Ex. C10. Two videos from February 15, 2024, showed [Appellant] smashing Branche's car's windshield with another rock and approaching the house with an object that the Commonwealth alleged to be a can of gasoline. Exs. C37-C38.

Trial Court Opinion, 7/25/25, at 1-2; *see also* Appellant's Brief at 5 (Appellant consistently describing the video evidence and conceding that the footage from February 11, 2024, "show[s] Appellant walking through the field of view, [and] kicking the door of the [] house").

After the close of evidence, Appellant's counsel moved for judgment of acquittal on many of the charges, including criminal trespass. *See* N.T., 8/22/24, at 4-13. Regarding criminal trespass, Appellant claimed "there was no testimony that [he] was aware he didn't have permission to be in" the house when he entered it on February 11, 2024. *Id.* at 11; *see also id.* at 12 (Appellant asserting the trial testimony established that "[w]hen people come to [the] house, they go through that basement door, and they just usually let themselves in. [Zollicoffer] usually leaves [the door] open."). The trial court granted judgment of acquittal solely regarding the charge of attempted risking catastrophe, and denied relief in all other respects. *Id.* at 25-26.

The jury subsequently found Appellant guilty of the above-described offenses and acquitted him of one count each of attempted arson, REAP, and

PIC. The trial court deferred sentencing. On January 10, 2025, the trial court sentenced Appellant to an aggregate 16 to 32 months of incarceration, and ordered him to pay Zollicoffer $550 in restitution. Appellant did not file post-sentence motions.

This timely appeal followed.[5] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our consideration:

1. Was the evidence insufficient to find Appellant guilty of criminal trespass in that the evidence failed to prove beyond a reasonable doubt that Appellant knew that he did not have license or privilege to enter [Zollicoffer's] residence?

2. Was the evidence insufficient to find Appellant guilty of criminal trespass as a felony of the second degree in that the evidence failed to prove beyond a reasonable doubt that Appellant broke into [Zollicoffer's] residence?

Appellant's Brief at 3.

In both his issues, Appellant challenges the sufficiency of the evidence supporting his conviction of criminal trespass. "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Thomas*, 336 A.3d 1038, 1049-50 (Pa. Super. 2025) (citation omitted). Accordingly, "our standard of review is *de novo* and our scope of review is

_____

[5] Appellant timely filed separate notices of appeal in both Case 1640 and Case 1642. This Court subsequently granted Appellant's application to consolidate the appeals.

- 6 -

plenary." *Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Our Supreme Court has instructed that

[i]n conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder. In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Muhammad*, 335 A.3d 1047, 1051 (Pa. 2025) (citation omitted). "Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Gary*, 332 A.3d 118, 124 (Pa. Super. 2025) (citation omitted).

Our Crimes Code defines the offense of criminal trespass, in relevant part, as follows:

**(a) *Buildings and occupied structures.***

**(1)** A person commits an offense if, **knowing that he is not licensed or privileged to do so**, he:

**(i)** enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

**(ii) breaks into** any building or occupied structure or separately secured or occupied portion thereof.

**(2)** An offense under paragraph (1)(i) is a felony of the third degree, and an offense under paragraph (1)(ii) is a felony of the second degree.

**(3)** As used in this subsection:

"*Breaks into.*"   To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa.C.S.A. § 3503(a) (emphasis added); ***see also id.*** § 302(b)(2)(i) ("A person acts knowingly with respect to a material element of an offense … if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist[.]").

"[I]n order to prove that [a person] committed criminal trespass, the Commonwealth [must] prove that [a defendant] (1) knew he was not licensed or privileged to enter the [building;] and (2) that he entered the [building]." ***Commonwealth v. Jackson***, 10 A.3d 341, 346 (Pa. Super. 2010). "The purpose of the criminal trespass statute is to prevent unlawful intrusion onto real property or remainder thereon[,] or to prevent unlawful breaches of the peace relating to realty." ***Commonwealth v. Powanda***, 304 A.3d 1284, 1289 (Pa. Super. 2023) (citation omitted).

Pursuant to section 3503(c), a defendant establishes a defense to criminal trespass where he demonstrates, *inter alia*, that he "reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." 18 Pa.C.S.A. §

3503(c)(3); *see also Commonwealth v. Knight*, 419 A.2d 492, 500 (Pa. Super. 1980) ("In most cases the Commonwealth will meet its burden of proving that the defendant was not licensed or privileged to enter by having the owner or occupant of the building testify that he or she did not give the defendant permission to enter."). This Court has explained that a person is privileged to enter "if he may naturally be expected to be on the premises often and in the natural course of his duties or habits," but a person exceeds his privilege if he "would not reasonably be expected to be present." *Commonwealth v. Benito*, 133 A.3d 333, 335 (Pa. Super. 2016) (citation and brackets omitted). "[A] lack of privilege may be found from the surrounding circumstances[.]" *Id.* at 336 (citing *Commonwealth v. Gordon*, 477 A.2d 1342, 1348 (Pa. Super. 1984)).

Instantly, there is no dispute that Appellant entered the house on February 11, 2024. *See*, *e.g.*, Appellant's Brief at 11. Appellant's first issue involves solely whether the Commonwealth established that he entered the house knowing that he was not licensed or privileged to do so. *See id.* at 11-14.

> Appellant points out that the evidence presented at trial established that
>
> (1) he previously visited the house on several occasions, "including the portion of the house into which he was convicted of trespassing";
>
> (2) although Zollicoffer testified that she had left a letter for Appellant at his residence telling him he was not welcome at the house, Zollicoffer "did not know whether Appellant ever received the letter"; and

(3) "[Zollicoffer] testified that even when [the door to her residence was] locked …, as was the case at the time of Appellant's entry into the [] house, the door through which Appellant entered would still open with a hard push, since the door was a little off its hinges and did not latch well."

*Id.* at 11, 12-13. Appellant concedes that the video evidence showed him kicking the door with "a backward mule kick," but asserts this action "inadvertently caused the [] already-broken door to pop open[.]" *Id.* at 13, 14; *see also id.* at 14 (Appellant stating he thereafter "simply entered [the house] as he believed he was, by custom, permitted to do.").

Appellant challenges the sufficiency of evidence regarding his *mens rea* to commit criminal trespass. It is established that the "element of intent, like every other element of the crime, must be proven beyond a reasonable doubt if the conviction is to survive a challenge to the sufficiency of the evidence." *Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. 1995). "[W]holly circumstantial evidence" can be sufficient for the Commonwealth to sustain its burden. *Gary*, 332 A.3d at 124 (citation omitted).

Instantly, the trial court opined that the evidence sufficiently established that Appellant possessed the requisite *mens rea* to sustain his conviction, reasoning as follows:

The facts introduced at trial … strongly supported the jury's inference that Appellant knew he was entering [the house] without permission. *See Gordon*, 477 A.2d at 1348 (knowing lack of privilege to enter a property can be inferred from the circumstances and manner of entry). Appellant had never lived at the [house]; he had only visited a few times, and had not been invited back for months. Zollicoffer had recently [left] a letter [for

- 10 -

Appellant at his residence] telling him not to come [to the house]. Based on these facts alone, the jury could reasonably have concluded that Appellant knew he lacked permission to enter. **See**, **e.g.**, **Thomas**, 336 A.3d at 1050-51 (resident's testimony that defendant knew he was not welcome at her residence, that she had not given him permission to enter, and that she told him to leave was sufficient to show [that the defendant] had a knowing lack of privilege to enter, despite having previously visited the residence with permission); **see also Commonwealth v. Schwartz**, 615 A.2d 350, 361 (Pa. Super. 1992) (testimony from residents that they had not invited defendant to their house was sufficient to show lack of privilege to enter).

**Appellant's own conduct, as recorded on surveillance video, made his knowing lack of permission even more clear.** He tried the door and found it locked. **Instead of leaving, or knocking politely and waiting for an answer, he banged on the door, shouted demands through it, and kicked it open. See** … **Commonwealth v. Woods**, 638 A.2d 1013, 1015-16 (Pa. Super. 1994) (finding sufficient evidence that defendant entered estranged wife's residence knowing he had no privilege to do so when he "had to enter the home by force since his wife would not allow him inside").

Nothing in Appellant's conduct after entering [the house] calls into question the jury's conclusion. Once inside, [Appellant] continued to demand money [from Zollicoffer]. [**Appellant**] **did not retreat, apologize, or explain himself when Zollicoffer asked if he had broken in. Once** [**Appellant**] **did leave, he angrily kicked Zollicoffer's car, and returned later that week to damage her and Branche's property. These are not the actions of a man who mistakenly believed that he had permission to enter an acquaintance's home.**

Trial Court Opinion, 7/25/25, at 5-6 (emphasis added; some citations modified).

We agree with the trial court's analysis, which is supported by the record and the law. Our review confirms that the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, sufficiently established that

Appellant entered the house without license or privilege, and that Appellant knew that Zollicoffer did not grant Appellant permission to enter the house. We additionally emphasize Zollicoffer's testimony that prior to Appellant's entry into the house on February 11, 2024, she had locked the door in question. N.T., 8/21/24, at 42, 81-82.

Accordingly, the jury had sufficient evidence from which to infer that Appellant possessed the requisite *mens rea* to sustain his criminal trespass conviction. *See*, *e.g.*, *Benito*, 133 A.3d at 336 (affirming a criminal trespass conviction under subsection 3503(a)(1)(ii), where defendant, the victim's estranged husband, "kick[ed] in the door" of the victim's residence to gain entry, after the victim "repeatedly made it clear to [defendant] that she did not want him on the premises," both of which evinced defendant's knowledge that he lacked the privilege to enter). *Accord Commonwealth v. Stallworth*, 781 A.2d 110, 118 (Pa. 2001) (citing eyewitness testimony that defendant, the victim's estranged husband, had "kicked in the victim's door prior to entering her home" as evidence tending to establish the "lack of privilege or license" element of the crime of burglary). Appellant's first issue merits no relief.

In his second issue, Appellant contends the evidence was insufficient to sustain the grading of his criminal trespass conviction as a second-degree felony under subsections 3503(a)(1)(ii) and (a)(2). *See* Appellant's Brief at 14-16.

Before elaborating upon Appellant's claim, we reiterate that criminal trespass by break-in, graded as a second-degree felony, occurs, in relevant part, when a person "knowing that he is not licensed or privileged to do so … **breaks into** any building or occupied structure[.]"   18 Pa.C.S.A. § 3503(a)(1)(ii), (a)(2) (emphasis added); *see also id.* § 3503(a)(3), *supra* (defining "[b]reaks into").  Conversely, criminal trespass, graded as a third-degree felony, occurs when a person "knowing that he is not licensed or privileged to do so … enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure[.]"  *Id.* § 3503(a)(1)(i), (a)(2).

Appellant argues that

> [e]ven if the evidence was sufficient to prove that Appellant entered [the] house knowing he did not have license or permission to do so, the evidence nevertheless fails to prove beyond a reasonable doubt that Appellant **broke into** the [] house, as that term is defined by [subsection] 3503(a)(3).

Appellant's Brief at 14-15 (emphasis in original).

Although Appellant concedes that the surveillance video shows him kicking the door, he asserts that

> the degree of force that comes with a backward-directed kick, as can be inferred from common experience, must be deemed so usually ineffectual as to not be considered a serious effort to force open a door.  Were it not for the already-damaged condition of the [] door, it seems likely that the door, as would most doors, could not be breached by a half-hearted walking-away mule kick.  Instead, the evidence showed only that the door inadvertently opened after Appellant's demonstration of anger, and he took advantage of the then-opened door to enter the [] house.  Such conduct, while constituting a felony of the third degree under the criminal trespass statute, does not rise to the level of a second-degree felony.

- 13 -

*Id.* at 15-16.

The Commonwealth counters that the evidence, including surveillance video, sufficiently established that Appellant forcibly broke into the house. Specifically, it asserts that the video from February 11, 2024, shows Appellant

> turn[ing] the doorknob, and the door did not open. Then [Appellant] forcefully kicked the door twice and exerted enough force on the locked door for it to swing open. Commonwealth Exhibit 2, at 00:19 – 00:27. The door did not open until the second kick, displaying that the door was stable enough to withstand the initial kick and required additional force to open. [Appellant] then entered the ho[use] and began yelling for [Zollicoffer], evincing that his actions were not simply out of anger, but for the particular purpose of gaining entry.

Commonwealth Brief at 9.

In its opinion, the trial court concluded that the evidence was sufficient to establish that Appellant "broke into" the house, to sustain the grading of the criminal trespass conviction as a second-degree felony:

> Zollicoffer testified that she had locked the door on the day in question. The surveillance video confirms that the door was locked, and that Appellant had to kick the door open to get inside. His two kicks constituted sufficient "force" to show that he "broke in" to Zollicoffer's residence.

Trial Court Opinion, 7/25/25, at 7.

Again, we agree with the trial court's analysis and conclusion. The evidence, viewed in the light most favorable to the Commonwealth, was amply sufficient to establish that Appellant forcibly "broke into" the house by kicking open the locked door. *See*, *e.g.*, *Benito*, *supra*; *Commonwealth v. Reed*, 216 A.3d 1114, 1121 (Pa. Super. 2019) (rejecting the appellant's sufficiency

challenge to his conviction of criminal trespass under subsection 3503(a)(1)(ii), where the evidence indicated that he and a conspirator "broke into [a secured] shed by breaking the original lock by force.").

Based upon the foregoing, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's criminal trespass conviction beyond a reasonable doubt. Accordingly, as neither of Appellant's issues entitle him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2026