J-S60038-17

2017 PA Super 310

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :

              v.                      :

ROBERT W. DUCK, JR.          :

           Appellant        :      No. 410 WDA 2017

Appeal from the Judgment of Sentence February 7, 2017
In the Court of Common Pleas of McKean County
Criminal Division at No(s):  CP-42-CR-0000340-2016

BEFORE:   OLSON, DUBOW, JJ., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:          FILED SEPTEMBER 29, 2017

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of McKean County following Appellant's conviction by a jury on the charge of simple assault (M-2), 18 Pa.C.S.A. § 2701(a)(1).  After a careful review, we affirm.

The relevant facts and procedural history are as follow: Appellant, who is thirty-eight years old, was arrested in connection with the assault of his eighteen-year-old nephew, Isaac Duck ("the victim").  On December 5, 2016, Appellant, who was represented by counsel, proceeded to a jury trial. At the trial, the victim testified that, on July 8, 2016, Appellant was at the victim's house, and they began to argue.  N.T., jury, 12/5/16, at 9.  During the argument, the victim retreated to his bedroom and sat on his bed; however, Appellant came into the room and continued arguing with the

_____
*   Former Justice specially assigned to the Superior Court.

victim. Id. at 10-12. At some point, Appellant left the bedroom and went downstairs, and the victim also went downstairs to get a drink, at which point the argument continued. Id. at 12. Suddenly, without the victim hitting or swinging at Appellant, Appellant pushed the victim "really hard," resulting in the victim "smashing" the back of his head on a door frame and falling to the ground. Id. at 13-14.

The victim testified that, as a result of his head hitting the door frame, his head was bleeding "a lot," he was disoriented, and he felt dizzy. Id. at 14, 24. He also sustained a laceration to his arm as a result of being pushed by Appellant. Id. at 18. He described the pain as a "five, six" on a scale of one to ten with ten being the highest. Id.

The victim indicated that, at this point, his little brother, Zachary Duck ("Zachary"), tackled Appellant and wrestled with him on the floor. Id. Meanwhile, someone called 911 and the victim, who testified that he was scared, went outside while awaiting the police. Id. at 16-17.

On cross-examination, the victim noted that he is "skinny," weighing only 130 pounds. Id. at 23. On re-direct examination, the victim noted that, after Appellant shoved him and he fell to the ground, Appellant stood over him and did not try to help him. Id. at 24.

Zachary testified that, on July 8, 2016, he was playing games on the computer in the dining room when he heard Appellant and the victim arguing. Id. at 28. He testified that, during the argument, the victim said

"F-U" to Appellant, and Appellant "picked [the victim] up and slammed him to the floor." Id. Zachary described the incident as a "choke slam." Id. at 29. As Appellant stood over the victim, Zachary, who was concerned that Appellant "was going to do more to [the victim]," tackled him and wrestled with him, resulting in Zachary's eyeglasses breaking. Id.

Zachary indicated that, as he was wrestling with Appellant, his grandfather, who is Appellant's father, intervened, saying, "What the heck's going on?" Id. at 29, 39. Zachary indicated his grandfather "didn't now anything else [had] happened." Id. at 29. After Zachary's grandfather mentioned someone needed to leave or he would call the cops, Appellant said, "Don't call the cops." Id. at 30. Zachary testified Appellant also said, "If a cop comes in here, I'm going to kill them[.]" Id. at 31.

Zachary testified that he believes Appellant then went into the kitchen and returned with a knife; however, he admitted that he could not see well because his eyeglasses were broken. Id. In any event, he called 911, and he went outside because he was scared. Id. at 31-33. Zachary testified that he suffered scrapes and bruises from Appellant's fingers, and he was "pretty upset" about the victim getting "hurt like that." Id. at 32.

On cross-examination, Zachary clarified that, during the argument, Appellant "just got up, went around [Zachary],…picked [the victim] up, [and] slammed him to the floor." Id. at 35. Zachary explained that Appellant actually lifted the victim off the ground by placing one hand

around the victim's neck and the other hand on the victim's back. Id. He described the incident as "more than just a shove." Id. at 36. Rather, he observed Appellant "physically hoist[ ] [the victim] in the air and slam[ ] him." Id. Zachary admitted that, after he and the victim went outside, Appellant did not come outside until the police arrived. Id. at 39-40.

Robynn Duck ("Ms. Duck") testified that she is the victim's mother, Appellant is her brother, and she was upstairs on July 8, 2016, when she "heard [a] crash." Id. at 43. Ms. Duck testified she ran downstairs and observed Zachary, who was crying, on the telephone. Id. at 44. She noticed the next day that the victim had a gash on the back of his head and a scratch on his arm. Id. at 45, 48. She testified the injuries were visible for a week or two after the incident. Id. at 46.

Police Officer Benjamin Lobdell testified that, on July 8, 2016, he was dispatched to the residence at issue for "a domestic in progress with weapons involved." Id. at 49. He arrived at the residence within one minute of receiving the call and found family members outside of the residence. Id. at 50. The family was distraught, informed him of the assault, and told him that Appellant was still inside of the house. Id. The family informed the officer that Appellant had a knife and was threatening to hurt any law enforcement official who entered the home. Id.

At this point, Appellant exited the house without a weapon and was arrested. Id. at 51. Upon entering the residence, Officer Lobdell did not

observe any weapons in plain view. Id. at 59. Officer Lobdell testified that he transported Appellant to the police station, and Appellant reported that he had been assaulted by the victim and Zachary. Id. at 60. Officer Lobdell described Appellant as compliant from beginning to end. Id. at 61. Officer Lobdell testified that Appellant weighs approximately 180 pounds and is six feet two inches tall. Id. at 63.

At the conclusion of the trial, the jury convicted Appellant of a single count of simple assault (M-2) as to the victim. Sentencing was scheduled for January 6, 2017; however, at this time, Appellant, through his counsel, made an oral motion for extraordinary relief under Pa.R.Crim.P. 704(B)(1)[1] seeking judgment of acquittal on the basis of insufficient evidence. The trial court took the motion under advisement and rescheduled sentencing for February 7, 2017.

On February 7, 2017, prior to sentencing, the trial court denied Appellant's previously made oral motion for extraordinary relief for judgment of acquittal; however, Appellant presented the trial court with a new oral motion for extraordinary relief under Pa.R.Crim.P. 704(B)(1). Specifically,

_____

[1] We note that Pa.R.Crim.P. 704(B)(1) provides that "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial."

Appellant moved for a new trial. Appellant averred that he had just received victim and witness statements to be used for sentencing purposes. One of the statements was authored by his father, Robert Duck, Sr.[2] N.T., sentencing, 2/7/17, at 7.[3] The following relevant exchange occurred between Appellant's counsel, the Commonwealth, and the trial court with regard to the oral motion for a new trial:

> [APPELLANT'S COUNSEL]: I think there might be a discovery violation that I wasn't aware of. The—the father, Robert Duck, [Sr.,] indicates through his letter that prior to the trial, he was taken upstairs with the witnesses to go over testimony with the DA. He gave an account in his letter, which I want to submit to the Court. He believed the boys were just wrestling, and they said they didn't need his testimony. That was never given to [the] Defense even verbally as discovery and that's potentially exculpatory evidence of what the witness....
>
> * * *
>
> [ADA]: Your Honor, with regard to the conversation I had with Mr. Duck (the father/grandfather) before the Trial, I believe—it's

_____

[2] Robert Duck, Sr., is Appellant's father. He is also Zachary and the victim's grandfather.

[3] In the statement provided to Appellant for sentencing purposes, Robert Duck, Sr., indicated the following:
> My name is Robert Duck, Sr. I believe that the time my son Robert spent in jail is punishment enough for what took place. On the day of his trial the witnesses were taken upstairs to go over their testimony when I told them that I though[t] that the boys were just wrestling[.] [T]hey told me that they didn't need my testimony and I was not even permitted into the courtroom[.] I believe that the defense attorney should have been aware of my testimony. Thank you for your time. Robert W. Duck, Sr.

Appellant's Brief at 25-26. See Motion for Reconsideration for Motion for New Trial, filed 2/21/17.

my recollection that he either didn't see the events or wasn't close enough, and that's why I wasn't calling him. This obviously involved a lot of family, so I was trying to keep the amount of people who had to testify to a minimum. I don't recall any mention of any sort of exculpatory or contradictory evidence that Mr. Duck informed me of prior to trial. And that—and that certainly would not be my reason for not putting him up there because I thought there was going to be some exculpatory evidence.

THE COURT: And this is [Appellant's] father.

[ADA]: I—yes, I believe so, Your—

THE COURT: So, I would think that testimony wouldn't have had any real effect anyway.

[APPELLANT'S COUNSEL]: Your Honor, it may not have; but if it's exculpatory, if it's somebody who was in the home when this hap—and I don't know—I don't know what the statement was. I just found out about this myself. If it's somebody that was in the home that could speak to potential intent, you had three witnesses. [Appellant's] sister in this case was upstairs, just heard it. The alleged victim said he was pushed into a doorway after a verbal argument, and [Zachary] who was the—the younger brother was the only decent witness in this whole case said that it was a choke slam, that the injury was sustained a completely different way.

Now, if we have another witness and the Commonwealth was aware of the statement that went to intent, that they were just horsing around versus he was trying to injure him, they have to at least tell me on the ongoing discovery rules so that I could potentially call him as a witness. They can't decide what is important to their case and not tell [the] Defense of potentially exculpatory evidence.

[ADA]: And, Your Honor, I'll—I'll submit that I have no recollection of that statement ever being made to me in terms of the boys wrestling.

Id. at 7-10.

The trial court denied Appellant's oral motion for extraordinary relief for a new trial under Pa.R.Crim.P. 704(B)(1) and sentenced him to three

months to twelve months in prison. Appellant filed written motions for reconsideration of the denial of his two oral motions for extraordinary relief, and the trial court denied the motions for reconsideration. This timely, counseled appeal followed on March 8, 2017, and all Pa.R.A.P. 1925 requirements have been met.

In his first issue, Appellant contends the evidence was insufficient to support his conviction on one count of simple assault, and thus, the trial court erred in denying his oral motion for extraordinary relief for a judgment of acquittal under Pa.R.Crim.P. 704(B)(1). Specifically, Appellant contends the evidence was insufficient to establish that the victim, in fact, suffered bodily injury. In this vein, it is Appellant's position that the victim did not suffer an impairment of physical condition or substantial pain. Rather, he argues the victim suffered a temporary hurt from a trivial contact which is a customary part of modern day living and which frequently occurs between family members. See Appellant's Brief at 20-21. We disagree.[4]

_____

[4] It is well-settled that "[t]he Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." Commonwealth v. Richardson, 636 A.2d 1195, 1196 (Pa.Super. 1994) (citation omitted). In the event this Court concludes the victim did not, in fact, suffer bodily injury, Appellant has presented an alternative argument to this Court; namely, that the evidence was insufficient to establish that he attempted to cause bodily injury to the victim. However, in light of our discussion infra, we find it unnecessary to address the alternative basis, which supports a conviction for simple assault under Section 2701(a)(1).

Our review of a ruling denying a motion for judgment of acquittal is guided by the following principles:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. As we have stated:
>
>> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Graham, 81 A.3d 137, 142 (Pa.Super. 2013) (quotation marks and quotation omitted).

Here, Appellant was convicted of simple assault under 18 Pa.C.S.A. § 2701(a)(1),[5] which provides the following:

> § 2701. Simple assault
> (a) Offense defined.-- Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>     (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1) (bold in original).

18 Pa.C.S.A. § 2301 defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." Substantial pain may be inferred from the circumstances surrounding the physical force used. Commonwealth v. Smith, 848 A.2d 973 (Pa.Super. 2004).

Here, in rejecting Appellant's claim that the evidence was insufficient to establish that the victim, in fact, suffered "bodily injury," the trial court relevantly stated the following:

> The victim testified that he and [Appellant] got into a verbal altercation which escalated to an assault when [Appellant] pushed the victim into the frame of a doorway. [The victim testified,] "I was pushed into the doorway, like, really hard." [N.T., jury, 12/5/16, at 14.] The victim's brother, [Zachary,] related that [Appellant] picked up the victim and "slammed him to the floor" after which [Zachary] tackled [Appellant]. [Id. at 24-25.] The victim's head hit the door frame causing a cut with significant bleeding and which resulted in a scab visible for [a week or two after the incident.] [The victim testified that he felt disoriented and dizzy after hitting his head. Id. at 14.] After

_____

[5] Appellant was convicted of simple assault as a misdemeanor in the second degree. Appellant has not challenged the grading of the offense.

the attack, the victim remembers [Appellant] then standing over him until he was tackled by [his] brother.  The victim testified:

> Q: What sort of injuries did you have after this—the physical altercation with [Appellant]?
>
> A: An injury to the back of my head...Oh, yeah.  An injury to the back of my head and an injury on my left arm.
>
> Q: Okay.  And you said an injury to your left arm.  What kind of injury was it?  Was it, like scratches or bruising or—
>
> A: Yeah, it was just a laceration.
>
> Q: Okay.  And did those hurt at all?
>
> A: Little bit, yeah.
>
> Q: Okay.  I know you're 18 and, you know trying to be tough, but on a scale of one to ten, what was the pain level like?
>
> A: Five, Six.
>
> * * *
>
> Applying [the appropriate] standard, the Commonwealth provided sufficient evidence for the jury to find that [the victim suffered actual bodily injury.]

Trial Court Opinion, filed 4/7/17, at 2-3.

We agree with the trial court's reasoning in this regard.  Specifically, we agree that the victim's head laceration, which bled "a lot," resulted in the victim feeling "dizzy" and "disoriented," produced a scab that was visible for a week or two, and caused pain described by the victim as a "five, six" on a scale of one to ten with ten being the highest, sufficiently meets the definition of "bodily injury" for purposes of the simple assault statute.  See Commonwealth v. Marti, 779 A.2d 1177 (Pa.Super. 2001) (holding officer who was struck in the jaw with a closed fist resulting in "slight swelling and pain" suffered actual bodily injury); In the Interest of M.H., 758 A.2d

1249 (Pa.Super. 2000) (holding student suffered bodily injury for purposes of simple assault where high school teacher's aide grabbed the student's arm and pushed her against a wall causing bruises on her arm that lasted several days); Commonwealth v. Adams, 482 A.2d 583 (Pa.Super. 1984) (finding actual bodily injury where the victim was struck in the head with an object hard enough to almost knock her unconscious).

We note that we specifically reject Appellant's argument that the victim suffered a temporary hurt from a trivial contact which is a customary part of modern day living and which frequently occurs between family members. In support of his argument, Appellant cites to Commonwealth v. Kirkwood, 520 A.2d 451 (Pa.Super. 1987), and Interest of J.L., 475 A.2d 156 (Pa.Super. 1984). In Marti, supra, this Court examined these two cases and held as follows:

> In Kirkwood, the defendant was charged with simple assault for aggressively fast dancing with a woman. The victim testified that she had pleaded with Kirkwood to stop because he was hurting her, but that he had continued to swing her until her husband intervened. She said the incident lasted approximately forty seconds and left her with bruises and cut marks on her arms. As a result, she testified she suffered pain in her arms and her right knee for a short period of time thereafter. We concluded these facts did not constitute sufficient bodily injury to sustain a conviction of a simple assault, in that "temporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault." Kirkwood, 520 A.2d at 454. We also opined "the assault section of the Crimes Code was intended to protect and preserve one's physical well-being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living." Id.

In Interest of J.L., supra, we reversed the adjudication of delinquency of a sixteen-year-old [girl] for simple assault where she elbowed her nephew to push him away [while they were seated on the living room couch.] [The toddler did not cry or exhibit any pain.] We noted "it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that frequently occur between siblings or other members of the same family." Id. at 157.

Marti, 779 A.2d at 1181.

We find Appellant's reliance on Kirkwood and Interest of J.L. to be misplaced as these cases are clearly distinguishable from the facts of the instant matter. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the victim in the instant case did not suffer a "temporary hurt" resulting from a "trivial contact" as occurred in Kirkwood. Rather, the victim suffered a visible injury to his head as a result of being pushed "really hard" or "slammed to the floor" during a verbal argument. It cannot be viewed in any sense as "trivial" social contact as was the, albeit aggressive, dancing in Kirkwood.

Furthermore, with regard to Appellant's reliance upon Interest of J.L., we note that, in that case, unlike in the instant matter, there was no indication the juvenile caused actual bodily injury to her nephew. Rather, the issue was whether she attempted to cause such bodily injury when she elbowed him. In any event, considering the spectrum of assaultive behavior, convictions for simple assault of a family member have been upheld where the behavior is clearly criminal, as occurred in the case sub

judice. See Commonwealth v. Ogin, 540 A.2d 549 (Pa.Super. 1988) (en banc) (upholding simple assault convictions of the child victim's parents; existence of substantial pain to victim sufficient to sustain convictions could be inferred from facts that child victim was grabbed by arm and flung against building by one parent and then screamed for several minutes, that she was struck in the face by one parent with extreme force causing her to fall against wall). Thus, we find no merit to Appellant's first claim.

In his final claim, Appellant alleges the trial court erred in denying his oral motion for extraordinary relief for a new trial under Pa.R.Crim.P. 704(B)(1). Specifically, Appellant asserts the Commonwealth violated Pa.R.Crim.P. 573(B)(1)(a) and Commonwealth v. Brady, 373 U.S. 83, 83 S.Ct. 1194 (1963), by failing to disclose that Appellant's father/the victim's grandfather, Robert Duck, Sr., made a statement to the prosecutor on the morning of the trial indicating that he believed "the boys were just wrestling."

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97. In response to the dictates of Brady, our Supreme Court promulgated Pa.R.Crim.P. 573 with respect to discovery in criminal cases. The Rule lists certain items and information that are subject

to mandatory disclosure by the Commonwealth when they are (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor. Pa.R.Crim.P. 573(B). Mandatory discovery includes any evidence favorable to the accused that is material to either guilt or punishment. Pa.R.Crim.P. 573(B)(1)(a).

With regard to Brady's and Rule 573(B)1)(a)'s requirement that the evidence be "material," this Court has held that "in the context of pre-trial disclosure, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Commonwealth v. Ferguson, 866 A.2d 403, 407 (Pa.Super. 2004) (quotation marks and quotation omitted). In this context, a "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id. (quotation marks and quotation omitted).

In the case sub judice, assuming, arguendo, Appellant's father, Robert Duck, Sr., made a pre-trial statement to the prosecutor indicating he believed "the boys were just wrestling," the prosecutor failed to disclose the statement to Appellant, and Appellant made a proper discovery request, we conclude that Appellant has not demonstrated that he is entitled to relief under Brady or Pa.R.Crim.P. 573(B)(1)(a).

Robert Duck, Sr.'s statement does not identify "the boys" to which he was referring. It is noteworthy that the only evidence offered on this matter

was from Zachary, who indicated his grandfather, Robert Duck, Sr., entered the room after Appellant assaulted the victim but while Zachary and Appellant were on the ground wrestling. Thus, inasmuch as there is no indication from Robert Duck, Sr.'s statement that he witnessed Appellant's physical assault of the victim, Appellant has failed to demonstrate that the statement contained "material" evidence. See Ferguson, supra.

In any event, assuming, arguendo, Appellant established Robert Duck, Sr.'s statement contained "material" evidence, it is well-settled that "no Brady violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." Commonwealth v. Morris, 573 Pa. 157, 178, 822 A.2d 684, 696 (2003) (citation omitted). Here, by all accounts, Appellant knew, or reasonably ought to have known, that Robert Duck, Sr., was in the house and walked into the room at some point during the physical encounters. Accordingly, Appellant had equal access to or could have uncovered Robert Duck, Sr.'s alleged observation with reasonable diligence.

For all of the aforementioned reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/29/2017