J-S45040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER DAVID WEBSTER | : | |
| | : | |
| Appellant | : | No. 824 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 28, 2025
In the Court of Common Pleas of Tioga County Criminal Division at
No(s): CP-59-CR-0000291-2023

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED: MARCH 20, 2026**

Appellant, Alexander David Webster, appeals from the judgment of sentence imposed by the Court of Common Pleas of Tioga County, following a non-jury trial at which the court found him guilty of burglary, strangulation, criminal trespass, criminal mischief, simple assault, harassment, and terroristic threats.[1] Appellant raises three issues on appeal. Upon review, we affirm.

On June 1, 2023, Appellant and the victim (Victim) were engaged to be married to each other. *See* N.T. Trial, 1/7/25, at 12. Prior to that date, they had a history of living together in Appellant's house and had split up their

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S. §§ 3502(a)(1)(i), 2718(a)(1), 3503(a)(1)(i), 3304(a)(5), 2701(a)(1), 2709(a)(1), and 2706(a)(1), respectively.

relationship several times due to disputes. *See id.* at 12, 18, 22, 43. Victim resided in her own apartment for six months before June 1; however, she had an open invitation to go to Appellant's house as they were still working on their relationship. *See id.* at 18-19.

That morning, Victim stopped by Appellant's house to see if he wanted to have lunch with her. *See* N.T. Trial, 1/7/25, at 10. She rejected his invitation to watch a video with him and left his house. *See id.* Victim's apartment was one of two apartments on the second floor of her building, with the other apartment being occupied by her neighbor, Taylor Hilfiger. *See id.* at. 3.[2]

Around 2:00 p.m. on June 1, Hilfiger heard "very loud banging and then screaming" at the door to Victim's apartment. N.T. Trial, 1/7/25, at 4. She looked out of her door's peephole and saw Appellant screaming at Victim to let him in while punching and kicking Victim's door. *See id.* Victim screamed back, "[N]o you're not allowed in. You're too mad. Don't come in." *Id.* Appellant got through the door, and Hilfiger heard screaming for approximately a minute. *See id.*

Then, Hilfiger saw Appellant leave the apartment and Victim came out. *See* N.T. Trial, 1/7/25, at 4. Hilfiger walked out of her apartment and Victim

---

[2] Victim and Hilfiger's apartment front doors were directly across from one another. *See* N.T. Trial, 1/7/25, at 3.

told her that Appellant stole her phone and she wanted to call 911. *See id.*[3] Afterwards, Hilfiger called the police and told them she needed an ambulance because Victim had "marks on her throat." *Id.* at 5.

Around 2:15 p.m., Corporal Alan Krall from the Pennsylvania State Police arrived at the scene and found Victim "very distraught and emotional." N.T. Trial, 1/7/25, at 25-26. Victim told Corporal Krall that Appellant had "choked her with two hands." *Id.* at 27. He observed a long vertical crack on the doorframe of the front door of Victim's apartment. *See id.* Additionally, he saw that Victim had a very light red mark across her neck from her right ear to under her left ear and took multiple photographs of the abrasions and her apartment. *See id.*; Commonwealth Trial Exhibit A (sixteen photographs from June 1, 2023).

After recording Victim's written statement, Corporal Krall spoke to Hilfiger and then went to Appellant's apartment to speak with him. *See* N.T. Trial, 1/7/25, at 28. Appellant did not admit to being physical with Victim or to breaking the door of her apartment. *See id.* At a later date, Corporal Krall spoke to the property owner of Victim's building and received from him an estimate for the broken door. *See id.* at 29. A non-jury trial in connection with the above facts took place on January 7, 2025.

---

[3] Victim confirmed that, initially, she thought Appellant took her phone, but he did not. *See* N.T. Trial, 1/7/25, at 21.

At trial, Hilfiger testified that she called 911 and told the dispatcher that an ambulance was needed because Victim had "marks on her throat" and that they "looked like hand marks." N.T. Trial, 1/7/25, at 5. Additionally, Hilfiger added that the door of Victim's apartment was never broken or damaged before the June 1 incident. *See id.* Then, Victim testified that Appellant:

> [c]ame to my apartment and was pounding on my door and acting just irate. He was upset because I wouldn't watch a video. I didn't understand why he was so upset over that, but he kept pounding and pounding and pounding and I said, could you please – I asked him to calm – I asked him to please calm down and come back later, like when he was calm, and he just kept pounding and pounding and pounding. I'm like, you have to go, like, please leave. But he didn't. I was standing by the door and he just – pound, pound - and the door – like I could hear the frame – I could hear the whole door just crack - and he got in.
>
> […]
>
> He grabbed me by the throat, took me all the way to where my kitchen table is, which is like – sorry – I guess maybe like twenty feet. So, he had me by my throat all the way back there and looked at me and told me – told me that if I called the cops he would kill me, and he shoved me to the ground and then he punched my air conditioner. He did have my phone. I thought he took the phone - sorry - but he had thrown the phone, so the phone was in my apartment - and then he left.

N.T. Trial, 1/7/25, at 10-11.

Furthermore, Victim testified that her door was locked when Appellant was pounding on it, and she told him that she didn't want him to come into her apartment. *See id.* at 12. Then, Corporal Krall testified that what Victim told him was consistent with her trial testimony, except that Appellant had choked her with two hands, and that "she couldn't breathe for a short period

of time…her throat hurt, her throat burned, she got dizzy, and it – and she was in fear for her life." ***Id.*** at 37.

Next, Appellant testified that, on the day of the incident, he believed Victim had taken his Vyvanse medication. ***See*** N.T. Trial, 1/7/25, at 40-41 (explaining he took multiple medications for bipolar disorder, attention deficit hyperactivity disorder, and helping him sleep). He claimed that his son's medication had been missing prior to that, and he assumed that Victim had taken it. ***See id.*** at 42. Appellant decided to go to Victim's apartment to get back his house key, post-office box key, and car key. ***See id.*** at 43. He admitted he was "extremely upset" and pounded on her door "harder than" he should have, hearing a crack as he left. ***Id.*** at 42-43.

Further, Appellant contradicted Victim and stated that she had let him into her apartment and unlocked the door herself. ***See*** N.T. Trial, 1/7/25, at 44. He also stated that Victim allegedly had rosea, a skin rash, and "gets red quite frequently." ***Id.*** at 50-51. Appellant explained he did not choke her and left because Victim was so upset. ***See id.*** at 52-53. Finally, Appellant's mother testified that, while Appellant and Victim lived together, his medications went missing. ***See*** N.T. Trial, 1/7/25, at 65-66. The mother admitted that Appellant's nature can be "aggressive" if he gets upset. ***See id.*** at 72. After closing arguments, the trial court found Appellant guilty of all counts mentioned above. ***See id.*** at 85-87; Order (verdict), 1/7/25.

On March 28, 2025, a sentencing hearing was held, and Victim chose to not attend. ***See*** N.T. Sentencing Hearing, 2/13/25, at 5. The court asked the

Commonwealth if Victim had a position with respect to Appellant's sentence because a restitution statement dated prior to the trial was attached to Appellant's pre-sentence investigation report. **See id.** The restitution statement was prepared by a victim witness coordinator, and it had a notation stating: "[Victim w]ould like the case over with. She has forgiven [Appellant] and does not want jail time. They are friends now and have made amends. Would like [the protection from abuse (PFA)] dropped." **See id.** at 6; Restitution Statement, 12/13/24, at 1.[4] The Commonwealth responded that it had been made aware of the restitution statement during a bail hearing on January 16, 2025. **See** N.T. Sentencing Hearing, 2/13/25, at 6. However, the court clarified that, at the bail hearing, Victim had testified contrary to what the note reflected. **See id.** at 7, 29. Then, Appellant was sentenced to a period of twenty-two to forty-four months of incarceration. **See id.** at 30-34; Order (sentencing), 3/28/25, at 1-2 (unpaginated).

Appellant timely filed a post-sentence motion, the Commonwealth responded, and a hearing was held on May 21, 2025. **See generally** Post-Sentence Motion, 4/7/25; Commonwealth's Response to Post-Sentence Motion, 4/16/25. Appellant, in his motion, challenged the sufficiency and weight of the evidence, and asserted that the Commonwealth failed to disclose

---

[4] The restitution statement was part of the record as Exhibit A of the Commonwealth's response to Appellant's post-sentence motion.

the restitution statement prior to trial, amounting to a **Brady**[5] violation. **See** Post-Sentence Motion, 4/7/25, at 2-13 (unpaginated). After the hearing, the trial court denied the post-sentence motion. **See** Order (denying post-sentence motion), 5/23/25.

Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and the trial court adopted its post-sentence opinion as its Rule 1925(a) opinion. **See** Notice of Appeal, 6/13/25; Rule 1925(b) Order, 7/16/25; Rule 1925(b) Statement, 8/6/25; Trial Court Opinion, 5/23/25; Order, 8/8/25 (adopting May 23, 2025 opinion as Rule 1925(a) opinion).

Appellant raises the following issues for our review:

I. Did the trial court abuse its discretion and/or commit an error of law in determining that the Commonwealth's failure to disclose a written statement made by the alleged victim to the [Tioga County] Office of the Victim Witness Advocate prior to trial was not a violation of **Brady v. Maryland**, 373 U.S. 83 (1963)?

II. Did the trial court abuse its discretion and/or commit an error of law by determining that the evidence presented by the Commonwealth at trial was sufficient to sustain a verdict of guilty against Appellant?

III. Did the trial court abuse its discretion and/or commit an error of law by determining that the verdict of guilty against Appellant was not against the weight of evidence?

_____

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

Appellant's Brief at 4 (suggested answers of the trial court omitted; numbering formatted).

First, Appellant argues that the trial court abused its discretion and committed an error of law in concluding that the Commonwealth did not violate **Brady** by failing to timely disclose a written restitution statement made by Victim to the victim witness coordinator less than one month before trial. **See** Appellant's Brief at 9.

We have previously summarized the import of the **Brady** decision, as follows:

> In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87[.] In response to the dictates of **Brady**, our Supreme Court promulgated [Pennsylvania Rule of Criminal Procedure] 573 with respect to discovery in criminal cases. The Rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are[:] (1) requested by the defendant[;] (2) material to the case[;] and (3) within the possession or control of the prosecutor. [**See**] Pa.R.Crim.P. 573(B). Mandatory discovery includes any evidence favorable to the accused that is material to either guilt or punishment. [**See**] Pa.R.Crim.P. 573(B)(1)(a).

**Commonwealth v. Duck**, 171 A.3d 830, 838 (Pa. Super. 2017).

A **Brady** claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Bagnall**, 235 A.3d 1075, 1084 (Pa. 2020). In asserting a **Brady** claim, a defendant must prove that: "(1) the evidence was favorable to the accused,

either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." *Id.* at 1086.

Relying on Rule 573 and ***Brady***, Appellant contends that the restitution statement disclosed at his sentencing hearing fell squarely within defense counsel's March 27, 2024 discovery request for Victim's written or memorialized statements. ***See*** Appellant's Brief at 9-10 ("[U]nder Rule 573(B), the Commonwealth had a mandatory obligation to turn the restitution statement over."). Moreover, Appellant argues he has satisfied the three-prong ***Brady*** test. ***See id.*** at 13. First, he asserts that the restitution statement constituted impeachment evidence because Victim was the primary witness and her credibility was central to the verdict. ***See id.*** at 10, 13. Second, he notes that the Commonwealth failed to disclose the restitution statement prior to trial. ***See id.*** at 11. Third, he alleges that the restitution statement was material, because, had defense counsel been aware of it, he could have cross-examined Victim regarding "its contents, her intent, her inconsistencies, and the possibility of [the] Commonwealth [using] bullying tactics to scare her into testifying as she did." ***Id.*** at 13.

Furthermore, Appellant alleges that the restitution statement could have bolstered his own testimony and challenged the credibility of Victim, thereby increasing his likelihood of acquittal. ***See*** Appellant's Brief at 11-12. Appellant concludes that the Commonwealth's suppression of the restitution statement

until after trial violated **Brady** and requires reversal and remand for a new trial. **See id.** at 13. We disagree.

Following our review of the record, we conclude no **Brady** violation took place. We agree with the trial court that the restitution statement was neither exculpatory nor useful for impeachment evidence at trial. **See** Trial Court Opinion, 5/23/25, at 5-6.

As stated above, the restitution statement indicated that Victim wanted the case to be over with, did not want Appellant to face jail-time, and wanted the PFA dropped. **See** Restitution Statement, 12/13/24, at 1. However, the restitution statement did not contain anything about the June 1 incident; it simply suggests that Victim did not want Appellant to serve jail time and wanted the PFA dropped. **See id.** Her expression of forgiveness, if anything, was inculpatory as to Appellant because it implied that Appellant had wronged her. In any event, Appellant was aware that Victim went back and forth on her decision of whether to drop the PFA against him. **See** N.T. Sentencing Hearing, 2/13/25, at 18-19, 21. Additionally, Appellant and Victim testified at trial that they had a "rocky" relationship. **See** N.T. Trial, 1/7/25, at 12, 43. Therefore, Appellant's argument that a **Brady** violation occurred is meritless.

Next, Appellant raises challenges to the sufficiency and weight of the evidence in the same section of his brief. **See** Appellant's Brief at 13-21. Although he correctly sets forth the distinct standards of review governing these claims, his analysis blends the two doctrines. **See id.** at 13-14, 21 ("Accordingly, because the Commonwealth failed to meet their burden to

sustain guilty verdicts and/or the weight of the evidence was against a finding of guilty to all of the above charges[.]"). In essence, Appellant conflates weight and sufficiency, which is improper because a weight claim concedes that the Commonwealth presented sufficient evidence to warrant a conviction. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-53 (Pa. 2000) (explaining distinctions between claim challenging sufficiency of evidence and claim challenging weight of evidence). This combined review is also improper because review of the sufficiency of evidence does not include an assessment of credibility of testimony offered by the Commonwealth. *See Commonwealth v. Juray*, 275 A.3d 1037, 1045 (Pa. Super. 2022) (citing *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003)). Instead, arguments as to credibility are more properly characterized as challenges to the weight of evidence. *See id.* To the extent that Appellant fails to meaningfully separate these two claims, we could find them waived. *See Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (finding Appellant's claim waived for weight of the evidence due to conflating weight and sufficiency claims). Moreover, this combination of arguments violates the rule requiring separate portions of a brief be dedicated to separate issues. *See* Pa.R.A.P. 2119(a). However, given that his separate arguments as to sufficiency and weight are identifiable, we will nevertheless address the merits of his claims separately.

First, we will assess Appellant's challenge to the sufficiency of evidence for his burglary, strangulation, simple assault, terroristic threats, and criminal

trespass convictions. "A challenge to the sufficiency of evidence presents a question of law, and as such, the standard of review is *de novo* and scope of review is plenary." *See Commonwealth v. Headley*, 242 A.3d 940, 943 (Pa. Super. 2020). Additionally:

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact[-]finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021) (*en banc*) (citation omitted).

First, Appellant raises a sufficiency challenge to his burglary conviction. *See* Appellant's Brief at 18. Under the subsection charged in this case, a person commits the offense of burglary if, with the intent to enter to commit a crime therein, the person "enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime

therein[.]" 18 Pa.C.S. § 3502(a)(1)(i). Appellant argues that the evidence was insufficient to sustain his burglary conviction because the Commonwealth failed to prove that he entered Victim's apartment with the intent to commit a crime. *See* Appellant's Brief at 18. He contends the evidence did not establish strangulation, simple assault, or terroristic threats; therefore, his burglary conviction is not supported by sufficient evidence. *See id.* We disagree.

Although Appellant contends that the Commonwealth failed to prove which specific crime he intended to commit upon entry in Victim's apartment, our Supreme Court has held that the Commonwealth is not required to prove the specific offense intended to be committed within the invaded dwelling unless it was otherwise specified in the criminal information. *See Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994) ("[I]n order to secure a conviction of burglary, the Commonwealth is not required to allege or prove what particular crime Appellant intended to commit after his forcible entry into a private resident."); *Commonwealth v. Brown*, 886 A.2d 256, 260 (Pa. Super. 2005) ("When the Commonwealth does specify, in the information or indictment, the crime defendant intended to commit, the Commonwealth must prove the requisite intent for that particular crime in order to prove a burglary or attempted burglary."). Here, the criminal information states that "[d]efendant did enter an occupied residence with intent to cause bodily injury and make terroristic threats" to Victim. Bill of Information, 6/1/23, at 2. As discussed in detail below, the evidence was

likewise sufficient to sustain Appellant's conviction for terroristic threats. *See infra* at 17-18.

Further, the evidence presented at Appellant's trial, when viewed in the light most favorable to the Commonwealth, established that Appellant entered Victim's apartment without her permission, threatened her, and choked her. We agree with the trial court that pictures of the broken door frame, Victim's marks on her throat and the testimony of Hiliger, Victim, and Corporal Krall were sufficient to sustain Appellant's burglary conviction. *See* Trial Court Opinion, 5/23/25, at 4; 18 Pa.C.S. § 3502(a)(1)(i). Indeed, the fact-finder could infer Appellant's intent from his aggressive actions at Victim's door prior to his entry. Accordingly, the evidence supports Appellant's burglary conviction. *See Bowens*, 265 A.3d 730, 740-41.

Next, Appellant challenges the sufficiency of evidence for his strangulation conviction. *See* Appellant's Brief at 18-19. Strangulation is committed when "[t]he defendant knowingly or intentionally impeded the breathing of another person by applying pressure to the throat or neck." *Commonwealth v. Weitzel*, 304 A.3d 1219, 1224 (Pa. Super. 2023); 18 Pa.C.S. § 2718(a)(1). The Pennsylvania Crimes Code defines "intentionally" as the actor's "conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S. § 302(b)(1)(i); *see also Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) ("[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances."). Moreover, "[i]nfliction of a physical

injury to a victim shall not be an element of the offense" of strangulation. 18 Pa.C.S. § 2718(b).

Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that he applied pressure to the throat or neck of Victim, impeding her breathing or blood flow. *See* Appellant's Brief at 18. Appellant contends that the Commonwealth only "offered a few blurry and grainy photographs," and there was no testimony from a physician or nurse. *See id.* at 19. Therefore, he asserts that the evidence failed to sustain his conviction for strangulation. *See id.* We disagree.

First, Appellant's contention that the Commonwealth needed to provide medical testimony lacks merit, as that is not an element of the crime needed to support a conviction for strangulation. *See* 18 Pa.C.S. § 2718(b). Upon review of the record, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's strangulation conviction. *See Bowens*, 265 A.3d at 740-41. Victim testified that Appellant grabbed her by the throat, causing her to struggle to breathe, and that she had scratch marks on her throat. *See* N.T. Trial, 1/7/25, at 15-16. Hilfiger and Corporal Krall's testimony regarding Victim's red marks on her neck corroborated Victim's testimony. *See* N.T. Trial, 1/7/25, at 4-5, 27. Moreover, the Commonwealth provided photographic evidence of Victim's throat, captured by Corporal Krall about fifteen minutes after the incident. *See id.* at 27-28; Commonwealth Trial Exhibit A (showing pictures of Victim's scratches on throat). Therefore, we find the evidence sufficient to establish that Appellant knowingly impeded Victim's

- 15 -

breathing by applying pressure to her throat. *See Weitzel*, 304 A.3d at 1224; *Miller*, 172 A.3d at 641. Accordingly, the evidence supports Appellant's strangulation conviction. *See Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018) ("[A] solitary witness's testimony *may* establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference.").

Next, Appellant challenges the sufficiency of evidence for his simple assault conviction. *See* Appellant's Brief at 20. The offense of simple assault requires that the Commonwealth prove that the defendant either attempted to cause bodily injury to another person or intentionally, knowingly, or recklessly caused bodily injury to another person. *See* 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is defined by statute as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Wroten*, 257 A.3d 734, 744 (Pa. Super. 2021).

Appellant argues that, because the Commonwealth failed to prove strangulation, it cannot sustain his conviction for simple assault, which requires proof of bodily injury. *See id.* at 20. He contends the Commonwealth failed to establish that Victim experienced "substantial pain," noting that Victim did not testify that she was hurt or felt pain. *Id.* Appellant further asserts that the Commonwealth presented no medical testimony or treatment records to corroborate Victim's bodily injury. *See id.*

- 16 -

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, as we must, under our controlling standard of review, Victim's testimony established that Appellant committed physical force to Victim's throat, causing her difficulty breathing, and leaving visible marks. ***See*** N.T. Trial, 1/7/25, at 12. From these circumstances, the trial court, as the fact-finder, was able to reasonably infer that Victim experienced substantial pain or bodily injury. ***See*** Trial Court Opinion, 5/23/25, at 4. Furthermore, the Commonwealth did not need to present medical testimony or explicit testimony of Victim's pain to establish bodily injury. ***See Wroten***, 257 A.3d at 744. Accordingly, the evidence was sufficient to sustain Appellant's simple assault conviction. ***See Bowens***, 265 A.3d at 740-41.

Next, Appellant challenges the sufficiency of his terroristic threats conviction. ***See*** Appellant's Brief at 20-21. To sustain a conviction for terroristic threats the Commonwealth must prove that the defendant: (1) made a threat to commit a crime of violence; and (2) the threat was communicated with the intent to terrorize. ***See Commonwealth v. Campbell***, 253 A.3d 346, 348 (Pa. Super. 2021); 18 Pa.C.S. § 2706(a)(1). Appellant argues the evidence was insufficient to sustain his conviction for terroristic threats because the only evidence that he threatened to kill Victim was her testimony. ***See*** Appellant's Brief at 20. He contends Victim did not report any death threat to Hilfiger immediately after the incident and raised it only later to police, undermining her credibility. ***See id.*** Given these alleged inconsistencies, Appellant maintains that the Commonwealth failed to prove

- 17 -

beyond reasonable doubt that he threatened to kill Victim. *See id.* at 21. We disagree.

At trial, Victim testified that, while Appellant was choking her, he stated that if she called the cops, he would kill her. *See* N.T. Trial, 1/7/25, at 10, 17. This Court has explained that, when a "[d]efendant makes the threat while at the same time engaging in activity indicating an intent to carry out the threat, the threat is not a mere spur-of-the-moment statement made in anger, and the evidence is sufficient to support a terroristic threats conviction." *Weitzel*, 304 A.3d at 1226. Applying that reasoning here, we find that Appellant threatened to kill Victim while actively choking her, which supports a terroristic threat conviction. *See Campell*, 253 A.3d at 348-49.

To the extent Appellant challenges Victim's credibility based on inconsistencies in her reporting of the threat, such a claim goes to weight of evidence, not its sufficiency. *See Juray*, 275 A.3d at 1044. Moreover, the uncorroborated testimony of a single witness, if believed, is sufficient to sustain a conviction. *See Commonwealth v. Crosby*, 226 A.3d 104, 106-09 (Pa. Super. 2020) (defendant's statement to victim that she was going to kill victim and others was sufficient to support terroristic threats conviction). The trial court, sitting as the fact-finder, credited Victim's testimony that Appellant said he was going to kill her. *See* N.T. Trial, 1/7/25, at 86 ("[Appellant] did say he was going to kill [Victim] so [terroristic threats is] sustained."). Accordingly, the evidence was sufficient to sustain Appellant's terroristic threat conviction. *See Bowens*, 265 A.3d at 740-41.

Finally, Appellant challenges the sufficiency of his criminal trespass conviction. *See* Appellant's Brief at 21. Under the subsection charged in this case, a person commits the offense of criminal trespass if knowing that he is not licensed or privileged to do so, he "enters or gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S. § 3503(a)(1)(i). Lack of privilege may be inferred from the surrounding circumstances. *See* ***Commonwealth v. Benito***, 133 A.3d 333, 336 (Pa. Super. 2016) (finding spouse's refusal to permit defendant entry into apartment constitutes lack of privilege).

Appellant contends that the Commonwealth failed to sufficiently prove that he broke into Victim's apartment. *See* Appellant's Brief at 21. He argues that the Commonwealth's own evidence suggested that Victim unlocked her apartment door deadbolt and allowed Appellant in voluntarily. *See id.* Accordingly, he concludes that the Commonwealth failed to sustain Appellant's conviction of criminal trespass. *See id.* Again, we disagree.

We find that the record supports the conclusion that Appellant was not licensed or privileged to enter Victim's apartment. Although Appellant claims Victim unlocked the door voluntarily, the evidence established that Appellant was in a rage and pounded on the door with such force that she feared he would break it. *See* N.T. Trial, 1/7/25, at 12. The photographs of the broken door frame, together with the testimony of Victim and Corporal Krall, permitted the trial court, as the fact-finder, to conclude that Appellant

- 19 -

committed criminal trespass. *See id.* at 12, 37; Commonwealth Trial Exhibit A (photographs of broken door frame). Under these circumstances, the fact-finder was free to reject Appellant's characterization of the entry as voluntary and to determine that he knowingly entered without privilege to do so. *See Benito*, 133 A.3d at 336. Thus, the evidence supports Appellant's criminal trespass conviction. *See Bowens*, 265 A.3d at 740-41.

Next, we address Appellant's final issue, his challenge to the weight of the evidence. *See* Appellant's Brief at 14.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that[,] notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

Any conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve. *See Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019). Our Court gives great deference to the trial court's decision regarding the weight of evidence because it had the opportunity to hear and see the evidence presented. *See Commonwealth v.*

*Cramer*, 195 A.3d 594, 600 (Pa. Super. 2018). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *See Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citation omitted).

Appellant's challenge to the weight of the evidence includes a brief argument addressing only his strangulation, terroristic threats, and criminal trespass convictions. *See* Appellant's Brief at 18-19, 20-21. He attempts to add argument that the trial court erred for disregarding the weight of the evidence for all of the convictions, generally challenging the credibility of Victim's testimony at trial. *See* Appellant's Brief at 21. We disagree that Appellant has demonstrated that the denial of his post-sentence weight claim was an abuse of discretion.

Although Appellant correctly recites the correct legal standards that apply to challenges to the weight of the evidence, his discussion of the issue is conclusory. *See* Appellant's Brief at 14. The trial court found Victim's testimony more credible "in terms of what occurred." N.T. Trial, 1/7/25, at 84. Appellant essentially requests that we replace the trial court's credibility determinations with our own; this we cannot do. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact[-]finder, whose findings will not be disturbed on appeal

if they are supported by the record.") (citation omitted). In the absence of a more developed argument from Appellant, the trial court's denial of the post-sentence weight claim is supported by the record, and the court's legal conclusion is sound. ***See*** Trial Court Opinion, 5/23/25, at 4-5. We discern no abuse of discretion on the part of the trial court on Appellant's third issue. ***See Windslowe***, 158 A.3d at 712.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/20/2026